William W. White, Administrator of Rachel J. Zane v. William W. Zane.

The property of the wife does not become the husband's by her permitting him to have possession of and use it. He can not acquire it except by gift or purchase, and that gift or purchase must be established by some other evi-dence than that of use and possession.

*Submitted January 8th    Decided June 6th.*

Error to Cass Circuit.

Rachel J. Zane, the wife of defendant, died in December, 1860, and plaintiff was appointed administrator on her estate by the Probate Court of Cass county, where the parties resided at the time of her decease. As such administrator he brought trover against defendant, for the conversion of a promissory note and certain articles of household goods and wearing apparel alleged to have belonged to Mrs. Zane in her lifetime.

On the trial of the cause before a jury, the following special verdict was found.

"The jury find that Rachel Zane was, at her decease, the wife of the defendant, and that she died on the 25th day of December, 1860, and that at the time of her death she owed nothing. That the property, in the declaration mentioned, was mostly owned by the deceased before her intermarriage with the defendant, and that the balance was purchased after her marriage, with her own money. That during such intermarriage until her death the defendant and deceased kept house and lived together as husband and wife, and the property aforesaid, except the note, was

used by them in the usual manner in keeping house, till the death of said Rachel, and remained with said defendant after such death. That said note came into the possession of defendant in October, 1860; that the defendant retained possession of the property after the decease of Rachel Zane, and did convert it to his own use, after the death of said Rachel and before the commencement of this suit. And the jury further find the value of the property mentioned in the declaration to be the sum of two hundred and twenty dollars and ninety-eight cents."

Upon this verdict the Court gave judgment for the defendant.

*D. Blackman*, for plaintiff, referred to *Cullen v. O'Hara*, 4 *Mich.* 132, and *Brown v. Fifield*, 4 *Mich.* 322.

*A. J. Smith* and *F. Muzzy*, for defendant:

1. The act of 1855 (*S. L. p.* 420), was designed to operate upon the wife's individual property during her life time, and no longer. It enabled her to dispose of it if she chose; but if she did not dispose of it during her life, at her death it remains just as it did before the passage of the statute.

2. In this cause there being no evidence to show that she had ever assigned, conveyed or disposed of said property, and the operation of the statute ceasing at her death, the rights of Zane in relation to said property were the same at her death as at common law before the passage of this statute.

3. The act of 1855 is in derogation of the common law, and must be construed strictly. Therefore, because the act gives the wife control of her property, and the power to transfer during her life, it is not to be inferred that the common law rights of the husband are taken away when no such conveyance has been made: — *Starkweather v. Smith*, 6 *Mich.* 377, is not in point in this case, because that case

simply decides that she has full control of her property while living.

4. If the personal property of the wife is reduced to the possession of the husband by her consent, it becomes his property both in law and equity: — *Shirley v. Shirley*, 9 *Paige*, 363.

MARTIN CH. J.:

The property of the wife does not, under our statute, become the husband's by user, or by the simple possession of it by him. The object of the statute was to prevent this result, and to abolish the common law rule respecting the marital rights of the husband over his wife's property.

The husband can not acquire the property of his wife except by gift or purchase, any more than he can that of a *feme sole*. Such gift or purchase must be established by some other evidence than that of use and possession. (See *Wales v. Newbould*, 9 *Mich.* 45).

The judgment must be reversed, and a judgment entered for the plaintiff for $220,98, as of September 13, 1861, with costs of both courts.

MANNING and CAMPBELL JJ. concurred.

CHRISTIANCY J. was absent when the case was decided.