BERTRAND ADOUE and JOSEPH LOBIT, partners, &c., respondents,

*v.*

MARY H. SPENCER, individually and as administratrix, &c., appellant.

[Argued November 26th, 1900.   Decided March 28th, 1901.
Filed April 3d, 1901.]

1. A conveyance of land by a husband to his wife by deed through a third party, to secure her for the principal of money of her separate estate taken and used by him, will be decreed to be a mortgage, and good as against creditors to the extent only of the amount of the principal so received by him, with interest thereon from the date of the delivery of such deed.

2. Where such a conveyance is attacked by creditors as voluntary or fraudulent, the burthen is on the wife to establish that her husband took and used her separate estate; but when that fact is established, whether such taking was with or without her consent, the burthen then shifts, and those claiming that such taking and use was by gift of the wife must establish such gift to the husband.

3. The presumption of law is against a gift by the wife of the principal of her separate property to the husband, and the burthen of proving it is upon him who asserts it.

4. The rule here stated does not apply to the income of the wife's separate estate. A gift of that may be implied from its receipt by the husband.

5. The statutes in the several states as to the property of married women, when as broad as the Texas statute or our own, have entirely overthrown the common law rule of the merger of the wife's entity and estate, upon marriage, in the husband.

6. It is unnecessary, under these statutes, that a wife shall take from her husband a promissory note, or other acknowledgment, upon handing him money of her separate estate, to be able to establish that such taking by him was a loan. In the transaction she will be considered as a *feme sole*, and as if a stranger to her husband.

7. In establishing her claim against her husband's estate, she is not more competent to testify to transactions with or statements by the testator or intestate, when the executor or administrator of her deceased husband is a necessary party, than any other witness.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *14 Dick. Ch. Rep. 231,* where the facts are sufficiently stated.

Adoue *v.* Spencer.

*Mr. Frank Bergen,* and *Mr. William T. Austin* (of the Texas bar), for the appellant.

*Mr. Sherrerd Depue,* and *Mr. John Neethe* (of the Texas bar), for the respondents.

The opinion of the court was delivered by

FORT, J.

This was a creditor's bill to set aside a conveyance made by John C. S. Spencer to his wife, passing the title through one Coote. The deed conveyed a one-half interest in property in the city of Elizabeth, in this state. At the time of the conveyance Spencer and his wife were domiciled at Galveston, Texas. The deeds were both dated September 6th, 1896, and the one from Spencer to Coote was acknowledged September 30th, 1896, and the one from Coote to Mrs. Spencer January 30th, 1897. Both deeds were recorded on February 1st, 1897.

Mr. Spencer died in Texas in June, 1897.. Letters of administration were taken out there, but his estate was admittedly insolvent at his death. On September 6th, 1898, the orphans court of Union county, in this state, after notice and hearing, granted letters of administration on his estate to Edward Nugent. The complainants in this case presented to the New Jersey administrator a duly verified claim against the estate of said John C. S. Spencer, which, after notice to the counsel of Mrs. Spencer, the widow, and the Texas administrator, and no objection being interposed on her behalf, the same was allowed by the administrator.

The claim was upon a note of Ladd & Company, of $12,000, with a collateral note of John C. S. Spencer given therewith. As to the legality of this claim and its rightful allowance we agree with the conclusions reached by the learned vice-chancellor. We also agree with him in his finding that, under the law of this state, a creditor whose claim has been allowed by an administrator is in a position to maintain a creditor's bill to set aside a con-

veyance of land by the intestate, which it is alleged was conveyed
to defraud creditors.

The case cited by the vice-chancellor was determined in this
court, and settles the law upon that subject in this state. *Haston*
v. *Castner, 4 Stew. Eq. 697.*

The consideration stated in the conveyance from Spencer and
wife to Coote and from Coote and wife to Mary H. Spencer
was $1.

The learned vice-chancellor throughout his opinion seems to
have treated these conveyances as deeds, while upon any theory
that would allow Mrs. Spencer to sustain the conveyance to her,
her deed must be treated as a mortgage. It surely, upon the most
favorable view to be taken of the transaction in her behalf, was
only security for an alleged indebtedness due from her husband
to her arising out of moneys of hers which he had appropriated to
his own use or which she had advanced him, either with or with-
out an express promise to repay, as her evidence and the facts dis-
closed establish. On this state of facts, even if the transaction
were not fraudulent, the creditors would be entitled to an equity
in this property, beyond the amount that was justly due to Mrs.
Spencer from her husband for money she had advanced and for
expenses for betterments and taxes which she may have paid, less
rents received since the conveyance to her. That conveyances to
secure debts are mortgages is undoubted. *Judge* v. *Reese, 9 C. E.
Gr. 387; Melick* v. *Creamer, 10 C. E. Gr. 429; Cake* v. *Shull, 18
Stew. Eq. 208; Winters* v. *Earl, 7 Dick. Ch. Rep. 52, 588.*

The decree in this case is that there is due to the complainants
from the estate of John C. S. Spencer, deceased, the sum of
$13,268.60, which is decreed to be a lien upon the lands in the
complainants' bill mentioned, and the deeds in question (above
recited) are set aside, annulled and made void as against the said
debt of the said complainants, and the defendant is to pay costs.

The one-half interest in the property in question is admittedly
of less value than the amount decreed complainants, and there-
fore the defendant, Mrs. Spencer (the appellant here), takes
nothing by the conveyance of her husband to her. That this de-
cree must be reversed and modified to the extent of the taxes or
assessments or both, paid upon the property by Mrs. Spencer,

together with the cost of the betterments placed thereon in excess of rents received, if any, we are all agreed. The case shows that on August 10th, 1897, Mrs. Spencer paid for taxes and assessments then upon the property $917.02. This was paid within two months after her husband's death and within about six months after the conveyance made to her was recorded.

The amount of these taxes and assessments was admitted to have been paid by Mrs. Spencer, as appears in the record, and a statement of them was marked "D 1," in evidence by consent.

I also think this decree should be reversed for another reason, namely, that there may be an ascertainment, either by the vice-chancellor or by a reference to a master, of the amount of any money or other personal property, or its proceeds other than income thereon, which came to Mrs. Spencer by gift, devise or descent, and which was received by her husband, either from her or from some other person for her account, and which was taken and used by him. To the extent that he received such funds I think he could, and, indeed, in law and morals should, secure her as he did by the conveyance of September 6th, 1896. Whatever that amount may be should also be decreed to be a prior lien to that of the complainants.

I agree with the learned vice-chancellor that the burthen is on Mrs. Spencer to establish the consideration for the conveyance to her, and that it is only good as a security to her for the amount which she can establish was received by her husband from her, or others for her, from the principal of her separate estate, and which had come to her by gift, devise or descent, as aforesaid; but I do not agree with him in his opinion where he seems to indicate, if not directly hold, that the burthen is on Mrs. Spencer to also show that the funds which thus came to her husband's hands were not given to him by her, but were a loan, for which he had agreed to repay or secure her. My reasons for this last position are twofold:

*First.* That, by the terms of the Married Women's act of the State of Texas, when a husband takes the principal of property which comes to his wife by gift, devise or descent, he takes it charged with a trust to administer it for the wife, and that to establish the taking in any other manner and a non-liability to

50

account therefor to her, he or those claiming against her must show an express agreement by her to that effect; and

*Second.* That the principal of the separate property of a married woman coming into the hands of her husband from her, or others acting for her, after the passage of a Married Women's act, where its terms are as broad as the Texas act or our own, is to be treated as if she were a *feme sole* at the time of its delivery to him, and the law will not presume that such money thus taken by the husband from her, with or without her consent, was a gift to him, and the burthen is upon him to establish that it was a gift, and is governed by the same legal rules of liability as if received from a stranger.

The Texas statute applicable to this case is as follows:

"Art. 2967. All property, both real and personal, of the husband, owned or claimed by him before marriage, that acquired afterward, by gift, devise or descent, as also the increase of all lands thus acquired, shall be his separate property. All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward, by gift, devise or descent, as also the increase of all lands thus acquired, shall be the separate property of the wife, but during the marriage the husband shall have the sole management of all such property.

"ART. 2968. All property acquired by either husband or wife during the marriage, *except that which is acquired by gift, devise or descent,* shall be deemed the common property of husband and wife, and during the coverture may be disposed of by the husband only."

This is a very comprehensive statute, and the last clause in article 2967, *"but during the marriage the husband shall have the sole management of all such property,"* is particularly forceful upon the question here at issue.

The statute expressly says all the property belonging to the wife before marriage and that acquired after "by gift, devise or descent" shall be her separate property, and the statute, by giving the husband during marriage the right to the sole management thereof, impresses upon all such property a trust to manage it for the wife, and the imposition of the duty to manage excludes a presumption of title passing or the property vesting in the husband or merging in his estate. When he takes property under that statute he takes it to manage, not as his own. By the statute the wife's consent is immaterial. She cannot prevent his taking

it if she were to so desire, and when he thus takes he takes just the rights the statute gives and no more. At his death his executors must account for his stewardship. If he has lost or misappropriated any of the property so taken he may secure the wife therefor out of any funds or property he may possess.

Nor does article 2968, as to the common property of the husband and wife, above quoted, change the effect of article 2967, because property coming to the wife during marriage by "gift, devise or descent" is expressly excepted out of the common property.

The conferring by statute or by private contract upon another of the "sole management of all such property" could by no known method of construction, as it seems to me, be converted into a right to divert to one's own use. The statute fixes the husband's obligation to account for all funds which came to his hands to manage as a sacred trust—all the more sacred because of the confidence of the marital relation.

The authorities which will sustain the second proposition above stated will apply with equal force to the first, and I shall proceed to consider the second before citing them.

The statutes now existing in the several states as to the property of married women have entirely overthrown the common law rule of the merger of the wife's entity and estate, upon marriage, in the husband. It is no longer necessary to hold that because a husband takes his wife's property into his possession that she is remediless. Nor is it necessary, under the Texas act, above quoted, that she take from her husband a promissory note or some other acknowledgment that the handing him the money was not a gift. There seems no reason in common sense that when a husband takes of the principal of his wife's estate into his possession that he should be presumed to acquire it as his own unless she has exacted some evidence in writing, or an express agreement by him, otherwise. There are many reasons why the rule should be the reverse of this, and that such a taking should be deemed a loan to him unless he prove otherwise. In equity, surely no other rule should obtain. Even at common law, a wife in equity might have a separate estate over which she

had the *jus 'disponendi* as if she were a *feme sole. Caton* v. *Rideout, 1 McN. & G. 599; Jones* v. *Clifton, 101 U. S. 225.*

If it is clear that a husband has taken the principal of his wife's separate estate, with or without her consent, but without an express gift or clearly implied intent to give, equity should hold it not a gift, but to be treated in the same manner as the money or property of any other person, taken by the husband under like circumstances, would be treated.

The true principal is stated by Mr. Justice Field, of the United States supreme court, in speaking for that court, as follows: "We are of opinion that * * * there would be no *presumption,* since the passage of the Married Women's act, that she *intended to give* to her husband the moneys she placed in his hand any more than a gift would be inferred from a third person, who, in like manner, deposited money with him. * * * We think that whenever a husband acquires possession of the separate property of his wife, *whether with or without her consent,* he must be deemed to hold it in trust for her benefit in the absence of any *direct evidence* that she intended to make a gift of it to him." *Stickney* v. *Stickney, 131 U. S. 227.*

The Married Women's act of the District of Columbia, upon which this decision was founded, is very similar to that of our own state, and not as clear and full as that of Texas.

The supreme court of Pennsylvania has stated the proposition in some of its phases even more strongly than the United States supreme court. It says (Mr. Justice Strong) : "When the act of assembly declares, as it does, that all property, real, personal and mixed, which shall accrue to any married woman during coverture by will, descent, deed of conveyance or otherwise shall be owned, used and enjoyed by such married woman as her own separate property; when the leading purpose of the act is to protect the wife's estate by excluding the husband, it is impossible for us to declare that mere possession of it by the husband is proof that the title has passed from the wife to him. After it has been shown, as it was in this case, that the property accrued to the wife by descent from her father's brother's estate, the presumption necessarily is that it continued hers. In such a case it lies upon one who asserts it to be the property of the hus-

band to prove a transmission of the title, either by gift or contract for value, for the law does not transmit it without the act of the parties. If mere possession were sufficient evidence of a gift, the act of 1848 would be useless to the wife. Nothing is more easy than for the husband to obtain possession, even against the consent of the wife; and when he obtains it with her consent, it can be at most but a slight evidence of a gift."

This case has since been followed in *Bergey's Appeal, 60 Pa. St. 408.*

In passing upon a like case, the supreme court of Michigan says: "The usual rule is that if one gives another money at his request, the law will imply a promise to repay, and we see no injustice in applying the rule against a husband where there are no circumstances tending to show a different understanding between the parties. This court has frequently held that the presumption of the law is against a gift by the wife to the husband, and the burden of proving it is upon him." *Sykes* v. *City Savings Bank, 115 Mich. 321.*

The facts in the Michigan case were more strongly in the favor of the husband's creditors than here. In that case the wife testified that she saw her husband was failing in business right along and losing money, and she told him she wanted her money back, and he gave it to her. He gave her $3,000 in cash, and the wife at once deposited the $3,000 in the City Savings Bank in her own name. It also appeared that there was no express promise to repay the wife, and it further appeared that a part of the money she had let her husband have was from the rents of a house that her husband had given her. She claimed she had given the husband the money from time to time to use without any promise to return it whatever, and yet, as against the creditors of a husband who thus gave his wife this money to secure her, the court held that the husband could lawfully prefer her, and repay her the money he had received from her, without any promise to repay the same at the time of the advancing thereof.

In the same state, in another case, it was said: "Something other than use and possession by him (the husband) permitted by her (the wife) must be shown to establish a gift." *White* v. *Zane, 10 Mich. 333.*

Adoue *v.* Spencer.

The Tennessee chancery appeal court has lately held: "A husband having received money from his wife's general estate may, in consideration thereof, *create* an indebtedness to her by agreeing to repay her, and may subsequently pay her by conveying property to her to the exclusion of his other creditors." *Sanford* v. *Allen, 42 S. W. Rep. 183.*

The supreme court of Kentucky, in a case where the husband was insolvent, and when so conveyed to his wife real estate as security for money of her's he had used, says: "While such conveyance was in payment of a debt which the grantor could not be compelled to pay, it is not strictly a voluntary conveyance, the grantee having an equity. She had a meritorious claim against her husband that, in equity and good conscience, he should repay her, although, of course, he could not be compelled to do so." *Poynter* v. *Mallory, 45 S. W. Rep. 1042.*

The Missouri supreme court holds that where a husband had reduced his wife's personal property to possession before the passage of the Married Women's act of 1875, as he had the legal right to do, that after the passage of that act the fact that he had done so would, to the extent he had so done, furnish a sufficient consideration for a valid deed of gift of land to the wife to make restitution of funds so taken. *Scrutchfield* v. *Sauter, 119 Mo. 615.*

The supreme court of Pennsylvania, in *Hauer's Estate, 140 Pa. St. 420, 425,* clearly states the rule here elucidated, and the distinction between the presumption as to a gift by the wife of her separate estate as between principal and income used by her husband as follows: "But a broad and plain distinction is drawn by the cases between the receipt by the husband of the income of his wife's separate property and the receipt by him of the principal or *corpus* of her estate. A gift of the income may be implied from his receipt of it with her consent, but a gift of the principal will not be presumed from her mere acquiescence in his receipt and use of it."

That the property received by Mrs. Spencer was her separate property, under the Texas statute, is established by the decisions of that state.

Property received by the wife by donation is separate property. *Fish* v. *Flores, 43 Tex. 344.*

Adoue *v.* Spencer.

Property coming to the wife by gift, devise or descent is separate property. *Herschell* v. *Blum, 2 U. C. Tex. 265; Ezell* v. *Dodson, 60 Tex. 331.*

A husband may convey property to his wife in Texas in payment of money previously used by him, and thereby make the property so conveyed her separate property. *Ross* v. *Kornrumpf, 64 Tex. 394.*

Even a voluntary conveyance by a husband to his wife of community property is good, and makes it her separate property. *Lewis* v. *Simon, 72 Tex. 475; Hall* v. *Hall, 52 Tex. 299.*

A husband may not sell his wife's personal property which comes to his hands to manage. *Kempner* v. *Comer, 73 Tex. 196, 201.*

It will answer no useful purpose to further extend this opinion by reference to other authorities. Since 1848, which was about the year of the beginning of the statutory creation of the wife's separate property rights, the trend of the decisions in all the states has been toward the rule here contended for. It can safely be said that with scarcely an exception the supreme court of the United States and the courts of last resort of all the states have held that as to the principal of the wife's separate estate, taken into the possession of a husband and used by him, he or his personal representative is bound to account to her, and that to sustain a refusal to so do, or to relieve from equitable liability to so do, the burthen is on him to establish that he received such property as a gift from her. His mere possession of it will not imply such a gift any more than it would from a like receipt from any other person. There appears no good reason either in law or morals why such should not be the rule. Under the Texas statute above cited, such a taking clearly can raise no presumption of a gift, for the statute expressly declares that it shall be a taking to manage; that it was taken by the husband in any other way he must prove by the preponderance of evidence in the cause, and equity under such a statute should guard the wife's right scrupulously.

To the extent that the principal of the separate statutory estate of the defendant in this case, which came to her by gift, devise or descent, was taken and used by her husband, we hold

that she is entitled to a lien, by way of security therefor, upon the property described in complainants' bill, there being no proof in the case that as to such property she intended the same to be a gift to her husband when he took it, and therefore the legal presumption, under the Texas statute, is that he came into the possession thereof only to manage it. What amount of the $41,391.02 set up in the defendant's answer, or established by the proofs in the cause, came to the defendant by gift, devise or descent under the statute, and was of the principal of her separate estate, thus acquired, will have to be determined by the chancellor or upon reference to a vice-chancellor or a master. The decree for this reason also is reversed that such ascertainment may be had.

From the fact that both the complainants and the defendant were domiciled in Texas, the Married Women's acts and the decisions thereon of that and other states have been largely referred to, but it is not intended thereby to imply that the rule in this state is not the same. The legal rules governing the rights of a wife against her husband or his personal representatives, as to the principal of her statutory separate estate taken and used by him, is not different in this state from that shown to be the rule in other states. Mr. Justice Magie, speaking for this court, in *Cole* v. *Lee, 18 Stew. Eq. 779, 785,* says:

"It is well settled that, on proof that a husband has received his wife's money, a court of equity will compel him and his representatives to account to her at least for the principal received, and they can only discharge themselves by showing that the husband disposed of the money according to the wife's directions, or that it was a gift to him. * * * Such liability to account for the wife's money would afford a consideration sufficient to support a mortgage made by the husband to a third person for the purpose of being transferred to the wife for her security."

In the case just cited the facts were that in 1855 the wife received $1,600 as her share of her father's estate and in 1865 about the same amount from the same source, and on each occasion she let her husband take $1,500 of this money.

On this point Mr. Justice Magie says: "I conclude that the

evidence proves that Mulford Cole [the husband] received $3,000 of his wife's money at the times named."

The mortgage was given to her some years after her husband took the money, and creditors whose claims existed at the time the mortgage was made filed the bill in the case to set aside the mortgage as tending to delay and hinder them. If the consideration of the mortgage was not good, it was void as against creditors. There was no pretence that, at the time the money was handed to the husband, there was any note, memoranda or other acknowledgment given to the wife that it was a loan, and the court says:

"Their case [the creditors] in this respect can only stand on the ground that the mere fact that Mulford Cole obtained this money from his wife raises a presumption that she gave it to him, which presumption will prevail unless she overcomes it by proof that the transaction was a loan. Such a presumption does not arise in favor of a husband or his representatives, at least as to the principal of his wife's money. * * * But when the fact is established beyond dispute of the reception by the husband of the wife's money, creditors can occupy no better position in the contest than the husband or his representatives."

Strenuous objection was made in this case against the admission of the evidence of the defendant, Mrs. Spencer, as to the statements by her husband to her as to this transaction. The vice-chancellor refers to this matter in his conclusions in the following language: "She [Mrs. Spencer] went into an elaborate statement of conversations between her and her husband as to his being indebted to her for these advances for their living, and her urging him to convey the Elizabeth property on account of it, and of promises on his part to do so. Seasonable objection was made to her testimony in this respect, and elaborate argument was had as to its competency. For the present purposes I shall consider it as competent and deal with it as such."

It is quite apparent that the learned vice-chancellor doubted its admissibility, but holding the view he did upon the law and facts upon the other branches of the case, deemed it unnecessary

to decide it, but in view of the fact that the case is to be reversed on other grounds, that it may be reconsidered to determine the amount for which the deed to Mrs. Spencer may be held by her as security for her advances, the question of the legality of her evidence is quite material.

We think that as to statements by or transactions with the deceased, she was not a competent witness.

This suit was to charge the property of her deceased husband, on which she held a mortgage, with the debt of the complainants. The extent of the husband's interest depended upon whether her mortgage was or was not valid, and for what amount valid. The bill in this case was filed by a creditor, and the administrator of the deceased husband was a party. The estate of the deceased being insolvent, and the allegation being that this property here sought to be charged was liable for his debts, made the administrator a proper, and, it seems to us, a necessary party. The bill in this case does not state that it is filed by the complainants for themselves and other creditors, but still such is its effect, and if there be any equity in this property, all creditors can come in at the foot of the decree and claim their rights to distribution through the administrator, who would undoubtedly take any surplus proceeds of the sale of this property, and the whole proceeds should be decreed to be paid to the administrator for *pro rata* distribution to creditors who may prove their claims. The deed to Mrs. Spencer states $1 as its consideration; that is merely nominal, and in proving her claim under it, treating it as a mortgage, she stands as a party to an action against the representative of her deceased husband, and is prohibited by our statute from testifying as to any transaction with or statement by him. *P. L. of 1900 p. 363 § 4.*

In construing this statute, this court has said: "It is apparent that the object of the legislature is to be primarily regarded, and that the object is to close the mouth of a party whose interest is antagonistic to the estate of a deceased person, in regard to those transactions in which the deceased bore a part, and concerning which he, if living, would be the most important, perhaps the only, witness beside the opposing party." *Smith* v. *Burnet, 8 Stew. Eq. 314, 322.*

To adopt the language of Mr. Justice Dixon in the case of *Dickerson* v. *Payne's Administrator,* in an opinion filed at the present term of the supreme court, "manifestly, in the transactions to which this plaintiff testified, the deceased bore a part, \* \* \* and, if living, would be the most important, perhaps the only, witness against her. He must have been present when many of her acts, if she testified truly, were performed, and as to those matters, if she testified falsely, he could, as a witness, have directly contradicted her. These are the conditions in which the legislature did not intend to legalize the testimony of a party against an adversary representing a testator or intestate."

We therefore think the testimony of Mrs. Spencer, in so far as it related to statements by or transactions with the deceased, should be excluded from the evidence in this cause, because inadmissible for any purpose.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, COLLINS, FORT, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES—10.

*For affirmance*—None.