**HAMMONTREE, Plaintiff-Appellee v. HAWLEY et, Defendants-Appellants.**

Ohio Appeals, Second District, Franklin County

No. 3552.   Decided July 27, 1943.

Eugene L. Hensel, Columbus, for plaintiff-appellee.

Thomas J. Herbert, Attorney General, Columbus, and John P. Walsh, Asst. Atty. General, Columbus, for defendants-appellants.

**OPINION**

By BARNES, P. J.

The above-entitled cause is now being determined as an error proceeding by reason of defendants' appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

Plaintiff's petition was filed on March 4, 1942, against four named individuals as members of the Board of Liquor Control of the State of Ohio; Jacob B. Taylor as Director of the Department of Liquor Control of the State of Ohio, and J. W. Cleary as Chief of the Enforcement Division of the Department of Liquor Control of the State of Ohio; all located at 33 North Third Street, Columbus, Ohio, praying for a temporary and permanent restraining order, and also declaratory judgment.

In substance the petition, among other things, alleges that the plaintiff owns and operates, and for the period of twenty-four years preceding the filing of this petition had owned and operated, a drug store at 1320 Monroe Street, in the City of Toledo, Ohio. In the operation of said drug store plaintiff is and has been engaged in the business of selling drugs, medicines, food, soft drinks, sundries, such as playing cards and similar commodities; and in the compounding of prescriptions. During all the times mentioned in the petition the plaintiff has been, and is now, the holder of a C-2 permit issued by the Department of Liquor Control of the State of Ohio, which said permit, by its terms, authorizes and permits the plaintiff, as the owner of a retail store in Toledo, Ohio, to sell in sealed containers only, and not for consumption on the premises where sold, malt liquor and wines and mixed beverages with maximum specified alcohol content.

Plaintiff has in his drug store a device known and designated as "Bally American League No. 8", upon which the Federal Amusement License Tax has been paid to the United States Government. This device is sometimes designated as a pinball machine, and is operated by the player inserting a coin in a slot which releases a certain number of metal balls for play. The operation of the pin ball machine is set forth in the petition in detail, but since the operation is so generally understood we refrain from repeating this specific allegation.

It is further alleged that the machine is solely for the amusement and entertainment of the patrons of plaintiff. No coins, tokens, slugs or other things of value are released, returned to the player or otherwise discharged from the machine upon its operation. The sole and only function of the machine is to permit the player to ascertain how high a score he may make by reason of his manipulation of the plunger which propels the balls against the pins.

It is further alleged that the device was not designed, constructed or intended for use in gaming or wagering.

It is further alleged by plaintiff that he has been advised by the defendants, acting through an authorized agent and employee, that unless plaintiff removes the aforesaid amusement device from his drug store the defendants will suspend, revoke and take from him the C-2 Permit issued by the Department of Liquor Control and thereby deprive plaintiff of the income arising from the sale of beverages pursuant to said permit. The allegation is also made that the defendants, unless restrained, will suspend, revoke and take from plaintiff the aforesaid C-2 Permit by virtue and by reason of a certain regulation heretofore adopted by the Board of Liquor Control of the State of Ohio, known and designated as Regulation 32-a, which provides as follows:

"No person authorized to sell beer, intoxicating liquors, or alcohol in Ohio shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder any device, machine or apparatus which may or can be used for gaming or wagering."

The petition contains the further allegations that the defendants, and each of them, held and do now hold that the ownership, possession and maintenance of the above-described amusement device, per se, constitutes a violation of Regulation 32-a as aforesaid; and, further, that the ownership, possession and maintenance of the above-described amusement device is not contrary to public decency, sobriety and good order, and is not in violation of Regulation 32-a as adopted and promulgated by the Board of Liquor Control of the State of Ohio.

It is alleged that said Regulation 32-a as prescribed and promulgated by the Board of Liquor Control of the State of Ohio is invalid, void and of no effect in law, in that said regulation is in violation of and contrary to the Constitution of the United States, the Constitution of the State of Ohio, and the statutes of the State of Ohio; that said Regulation constitutes

an unauthorized, unwarranted, illegal and unconstitutional assumption and arrogation by the Board of Liquor Control of the State of Ohio, of legislative powers and functions contrary to the Constitution and statutes of the State of Ohio; and, further, that such Regulation is invalid as being indefinite, unreasonable, uncertain and devoid of any direct statement of a positive rule of conduct by which this plaintiff and other permit holders similarly situated may be guided in the operation of their respective businesses.

Then follows the prayer, as heretofore indicated.

The specific request as to declaratory judgment is that the Court declare and decree that the ownership and operation of the amusement device described in the petition be held not to be a violation of Regulation 32-a, and, further, that the Court declare and decree that Regulation 32-a, as prescribed and promulgated by the Board of Liquor Control of the State of Ohio be declared invalid, void and unconstitutional and of no legal effect; and for such other relief to which plaintiff may be entitled in the premises.

The defendants, and each of them, jointly and severally, demurred to the petition for the claimed reason that the same did not contain facts which show a cause of action. The demurrer was overruled without prejudice to the defendants to raise any and all questions in subsequent proceedings in the action.

Thereafter the defendants filed a joint and several answer, and after admitting certain formal allegations, denied all others.

The case came on for hearing and evidence was introduced by both parties. Before the presentation of evidence was closed, the defendants moved the Court to dissolve the temporary restraining order previously issued, and that plaintiff be denied the injunctive relief prayed for.

Counsel for plaintiff interposed no objection, provided the cause continue as one for declaratory judgment.

The trial court sustained the motion, dismissing the injunction and advising that the declaratory feature of the prayer would remain for determination.

Following the presentation of all evidence, the cause was submitted and briefs filed. On December 31, 1942, the trial court caused to be journalized its finding and judgment that there was an actual controversy existing between the plaintiff and defendants; that the cause presents a justiciable dispute entitling plaintiff to declaratory judgment and that plaintiff is entitled to have the declaratory judgment as prayed for. It is further provided in the judgment entry that Regulation

32-a, as promulgated and prescribed by the Board of Liquor Control of the State of Ohio is invalid, void and unconstitutional.

Within due time the necessary steps were taken through which defendants filed a notice of appeal on questions of law, and the cause thus lodged in our Court.

Very able and comprehensive briefs have been filed.

Defendants' assignments of error are set out under four separately numbered and stated specifications as follows:

"1. That the court erred in finding that there was an actual controversy presenting a justiciable dispute between the parties.

"2. The court erred in finding that Regulation 32-a of the Board of Liquor Control of the State of Ohio is invalid, void and unconstitutional.

"3. The decision of the court was against the manifest weight of the evidence.

"4. The decision of the court was contrary to law."

We now take up the first assignment of error.

The legal principle is universal, not only in the State of Ohio but in all other jurisdictions, that an action for declaratory judgment will not lie unless there is an actual controversy presenting a justiciable dispute between the parties. This principle is asserted by counsel for the defendants-appellants and concurred in by counsel for plaintiff-appellee, so that citation of authorities is unnecessary. It therefore follows that the only question arising under this first assignment of error is one of fact. It is conclusively shown that none of the defendants ever saw or knew the plaintiff, or either directly or indirectly made any order affecting his C-2 Permit. No charges were pending or had ever been filed affecting the C-2 Permit. Following the institution of the action plaintiff's permit was renewed without objection, and at the time of the renewal no reference was made concerning his having in his possession a pin ball machine. Defendants urge this fact as demonstrative that there was no justiciable dispute between the parties.

Counsel for plaintiff argues that since a restraining order had been issued defendants could not deny the renewal of the C-2 Permit without being in contempt under the court order. We are unable to conclude that the temporary restraining order was of such a character as would compel the defendants to issue a renewal permit. They were only enjoined from doing

anything that would vitiate the existing permit. The only supporting evidence of the claimed controversy was contained in the evidence of the plaintiff. He testified that in December, 1941, an inspector—or he thinks he called himself an inspector —told him that he could not have a pin ball device and a C-2 license or any other kind of a liquor license at the same time. He further testified that this person advised that he send in his license to the Commission to be held in escrow until the thing might be cleared up. "He didn't know just for sure what would be done about it."

Counsel for defendants objected to the introduction of this testimony and preserved the record throughout. The ground of the objection was that no inspector was a party to the suit, and further, the name of this inspector was unknown.

The plaintiff in testifying stated that he did not know the name of this inspector, nor was he able to find out. The trial court was hesitant to admit the testimony in the absence of any evidence of identification since the individual might or might not be a duly authorized inspector. The evidence was finally admitted on condition that it would be connected up. Counsel on both sides were inquired of by the court as to whether or not either knew the name of this so-called inspector. Counsel for plaintiff knew nothing more than what his client had told him. Counsellor for defendants said he knew nothing about it at all.

Plaintiff sought to bolster his identification of the individual as an inspector by testifying that he knew that other permit holders having pin ball machines had been contacted by a person holding himself out as an inspector.

This evidence, of course, would have no probative force since it was purely hearsay.

The taking of evidence before the Common Pleas Court started on June 12, 1942, and at the end of the day the further hearing was adjourned until Monday morning, June 22. The record is silent as to the reason or purpose of this ten-day adjournment, but we assume it was for the purpose of securing further evidence if possible as to the identification of the individual claimed to be an inspector. However, the adjournment was continued until June 29, at which time one witness only was called. This was one of the defendants, Jacob B. Taylor, and he was called as a witness on behalf of the plaintiff. There was no suggestion that Mr. Taylor was called for the purpose of cross-examination. Mr. Taylor at the time held a position in the State as Director of Liquor Control, and as such had direct charge of the enforcement of the regulations promulgated by the Board of Liquor Control. In his

official capacity he is the direct superior of Mr. Cleary, who was chief of the Enforcement Division of the Department of Liquor Control. Mr. Taylor further testified that he issued orders to inspectors through the Chief Inspector with respect to the performance of official duties.

While a correct legal conclusion, having no particular weight as testimony, Mr. Taylor did testify in chief that no inspector of the Department of Liquor Control would have a right to say that unless the pin ball device was removed, that the license would be revoked.

Under the pertinent Code sections and the Rules and Regulations the Board of Liquor Control, and it alone, would have the right to issue or revoke a license.

The inspectors were field men and as the title infers, were individuals who would make the direct contacts with the permit holders. In going into the place of business of a permit holder, they might or might not identify themselves. If the inspector found any condition which in his judgment was a violation of the conditions under which the permit was granted it was then the duty of the inspector to make a report to his immediate superior located in the inspector's district, and the latter in turn would make a report to the chief of the Enforcement Division, who was the defendant, Mr. Cleary, and after further consideration Mr. Cleary might take up with the Attorney General the question of making out a charge against the permit holder and bringing him before the Board, where, after notice, a hearing would be had.

The defendant, Mr. Taylor, further testified that he had sought to find out about the inspector going to the plaintiff's place of business by making inquiry of the defendant, Mr. Cleary, and had been informed that an inspector had been at plaintiff's drug store, but that he did not know what was said.

Counsel for plaintiff argues that this evidence connects up with plaintiff's testimony relative to what was said by an alleged inspector who visited the store. We do not think it does connect up or adds anything to the record as it existed before the taking of the additional testimony following the adjournment of June 12. It seems to us that there was the opportunity to make the inquiry, either from Mr. Taylor or Mr. Cleary, after the former had testified that he had learned that an inspector had been at plaintiff's drug store. We fail to understand why inquiry was not made as to who the inspector was, and further questioning might have developed an identification of the individual concerning whom the plaintiff had testified. We assume that inspectors make frequent trips

to the place of business of a permit holder and hence the fact that Mr. Taylor ascertained that an inspector had been in plaintiff's drug store would in no sense be corroborative of plaintiff's testimony as to what the claimed inspector said to him, particularly in view of the fact that Mr. Taylor testified that he did not know what was said, if anything, by the inspector.

Considering the record in its entirety, we are constrained to the conclusion that there is an entire absence of evidence supporting an essential allegation of the petition that there was an actual controversy presenting a justiciable dispute between the parties. We might state further that the three defendants, namely, Harry E. Hawley, Chairman of the Board of Liquor Control, Jacob B. Taylor, the Director of Liquor Control, and John M. Cleary, Chief of the Enforcement Division of the Department of Liquor Control, all testified in substance that they agreed with the contention of plaintiff that his pin ball machine, as operated in his drug store, was not a gambling device, and, further, that under the existing conditions there would be no grounds for filing or hearing charges against the plaintiff.

Counsel for plaintiff cites us to a number of cases which, in effect, hold that the existence of an unconstitutional law or regulation constitutes a threat to all persons upon whom it does or may operate.

This principle of law makes it necessary to determine whether or not under the facts of the instant case, the unconstitutionality of Regulation 32-a would constitute a justiciable dispute, even though there was no dispute in fact.

We think these cases are readily distinguishable, as would appear from the brief recital of the basis of the decision.

We are first referred to three decisions of the Supreme Court of the United States:

Village of Euclid v Ambler Realty Co., 272 U. S., 365;

Pierce v Society of Sisters, 268 U. S., 510;

Southern Pacific Terminal Co. v Interstate Commerce Division, 219 U. S., 498.

In each of the three cases action for injunction had been instituted and the defendants were raising the question that the action was premature. In each case the plaintiff's right to bring the action was sustained, on the theory that the law or ordinance by its mere existence constituted a present invasion of plaintiff's property rights.

In the first case, Village of Euclid, supra, property owners sought to enjoin the village officials from enforcing the pro-

visions of a certain zoning ordinance prohibiting plaintiffs from erecting a hotel building on a certain parcel of real estate after the plaintiffs had invested considerable money in anticipation of such construction. The defendant filed a motion to dismiss the injunctin on the ground that the plaintiff had not filed an application for a building permit; had not been refused such a permit; and had not appealed to the Zoning Board of Appeals from the decision of the Building Inspector, as provided in the ordinance, before bringing the action. The United States Supreme Court held that these procedural requirements need not be made, since the existence and maintenance of the ordinance in effect constitutes a present invasion of appellee's property rights.

In the Pierce case, supra, the State of Washington had passed a statute compelling all children of school age to attend the public schools in the districts in which they reside, which statutory provision was to become effective after a period of two years. Certain plaintiffs, being residents of a district, immediately after the passage of the law, brought an action in injunction challenging the constitutionality of the statute. The defendants demurred on the ground that the action was prematurely brought. The United States Supreme Court overruled the demurrer, and in branch 6 of the syllabus made the following statement:

"Where the injury threatened by an unconstitutional statute is present and real before the statute is to be effective, and will become irreparable if relief be postponed to that time, a suit to restrain future enforcement is not premature."

The Southern Pacific Terminal Company case, supra, involved an order issued by the Commission to stop making certain preferential weight allowances to a shipper named Young. By its terms the cease and desist order was to expire in two years from the date of its issuance. Plaintiff brought his action in the District Court to enjoin the enforcement of the order and challenging its constitutionality. By the time the case reached the Supreme Court the order by its terms had expired. The Government, on behalf of the defendant, moved to dismiss the appeal on the ground that the question was moot. The Court refused to dismiss the appeal, but entertained jurisdiction to pass upon the case on its merits. Under syllabus 1 the Court held in substance that the case is not moot where interests of a public character are asserted by the Government under conditions that may be immediately repeated, merely because the particular order involved has expired.

Reference is also made to the following cases in other

jurisdictions which are more directly in point, because seeking declaratory judgment:

Faulkner v City of Keene, 85 N. H., 147;

Socony-Vacuum Oil Co. v City of New York, 247 App. Div. 163;

Acme Finance Co. v Huse, 192 Wash. 96;

Erwin Billiard Parlor v Buckner, Sheriff, 156 Tenn., 278.

In the Faulkner case, supra, certain property owners brought an action for declaratory judgment against city officials and declaring that the property owned by plaintiffs could be used for filling station purposes without violating the provisions of the City Zoning Ordinance. The city answered, denying that they had asserted any adverse claim against the plaintiffs, and hence there was no justiciable issue. The Court denied the contention of the defendants and proceeded to determine the case on its merits. The Court quoted with approval from two United States Supreme Court decisions, to-wit, Euclid v Ambler, supra, and Pierce v Society, supra, as follows:

"The existence and maintenance of the ordinance, in effect, constitutes a present invasion of appellee's property rights."

In the Socony-Vacuum Oil Company case, supra, the plaintiff and others united in bringing an action for injunction and for declaratory judgment, seeking to hold a certain regulation unconstitutional as constituting double taxation. The defendants disputed the plaintiffs' right to invoke either injunctive relief or the declaratory judgment, claiming that the plaintiffs were bound by the remedy provided in the ordinance. The Appellate Court overruled defendants' position. This case apparently turns upon the right to bring an action for declaratory judgment where another remedy is provided. We need not give concern to this principle, since the courts of Ohio have adopted this same principle. However, we fail to see how it helps our present question.

In the Acme Finance Company case, supra, plaintiff brought the action for declaratory judgment against certain state officials for declaration holding unconstitutional a recently enacted "Small Loans Act", before the act became effective. The defendant demurred on the ground that the action was premature since the act was not yet in effect and there was no present threat of its enforcement against the plaintiff. The action was commenced on May 7 when the effective date of the act was June 9. The Court denied the

claim of the defendants and entered a declaratory judgment. In substance the court held that the proper basis for relief is presented where plaintiff alleges and shows that he will be directly damaged in person or property by enforcement of the statute, etc.

The Billiard Parlor case, supra, was an action brought against the sheriff to enjoin the sheriff from arresting the plaintiff for operating a pool room in a county where operation was prohibited by statute. Claim was made that the statute was unconstitutional. The court denied the injunction on the well established rule that equity will not restrain the prosecution of criminal statutes by police officers. However, the court did hold that the action for declaratory judgment would properly lie. This case is to be distinguished from the instant case in that it was shown and proven that the sheriff was threatening prosecution and he was a party defendant.

The cases above cited are based upon particular factual situations, not present in the instant case. No property right involved under liquor permit. **State ex v O'Brien et, 130 Oh St 23.**

The general rule is that a court under a declaratory judgment proceeding does not have the right to determine whether a statute, ordinance or regulation is abstractly valid or invalid. We quote from 16 American Jurisprudence, 298, under the title "Declaratory Judgments":

"It is not within the province of courts to determine whether a statute is abstractly valid or invalid at the instance either of the state or of an individual. Hence, while a declaration construing a statute or ordinance and determining its validity will be made where there is an actual controversy between the parties, requiring the determination of this question, ordinarily so such declaration will be made in the absence of such an actual controversy. In order that a controversy may justify the making of a declaration, it must include a right claimed by one party and denied by the other, and not merely a question as to the abstract meaning or validity of the statute."

At page 301 of the same text, this statement appears:

"The rule has been laid down that the courts will not pass upon the constitutionality of a legislative act where it does not appear that any attempt has been made to enforce the act, since 'for them to declare invalid an unenforced statute

would be equivalent to passing upon a mere abstraction". Nor will the courts render a declaratory judgment as to the validity of a statute or ordinance until a situation has arisen or is imminent which calls for its application or enforcement. In other words, the courts will not enter into a speculative inquiry for the purpose of condemning statutory provisions the effect of which in concrete situations not yet developed cannot be definitely perceived."

In an article in 50 A. L. R., at page 44, the following is found:

"Jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy exists between the parties, all of whom are sui juris and before the court, and that the declaration sought will be a practical help in ending the controversy."

The Ohio case which is directly in point is that of **Driskill v City of Cincinnati, 20 OO 245.** This is a very recent case, decided by the Court of Appeals of the First District in 1940. In this case plaintiff alleged that he was the owner of certain valuable personal property which "could be used for the purpose of gambling and might be kept for such purpose". Plaintiff sought to have the court declare an ordinance of the City of Cincinnati invalid. The court denied the prayer of the petition on the ground that there was no justiciable dispute between the parties set out in the petition.

It appears from the record that the petition did set out the ordinance and its claimed unconstitutionality, and if the existence of an unconstitutional law or regulation would constitute a threat to all persons upon whom it does or may operate, then the petition was good as against demurrer. The second syllabus in the Driskill case reads as follows:

"A declaratory judgment can be rendered only in cases where there is a real controversy between adverse parties in a matter which presents a justiciable dispute."

Judge Doyle in rendering the opinion cites the case of **Schaefer v First National Bank, 135 Oh St 511.** There is also a quotation from Borchards Declaratory Judgments, page 40:

"The danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events

—although it may involve future benefits or disadvantages—and the threat to his possession must be actual and genuine and not merely possible or remote."

It seems to us that counsel for plaintiff, at page 20 of his brief, in discussing the Driskill case, supra, answers his own argument relative to United States Court decisions and those of other jurisdictions wherein he says:

"The Court of Appeals held, and we think properly, that there was no justiciable controversy before the Court, and that there was no actual controversy between the parties."

The only distinction in substance between the instant case and the Driskill case, supra, is that the Driskill case failed to allege any justiciable dispute between the parties; whereas in the instant case the petition contains such an allegation. However, when we determine, as we do, that there was a failure of proof of any justiciable dispute, then the two cases are on all fours.

As heretofore stated, we are constrained to the view that there is an absolute failure of evidence in support of this material allegation of the petition, and hence plaintiff's cause of action should be dismissed. Determining the first ground of error as we do, and the dismissal of plaintiff's cause of action, renders unnecessary consideration and determination of the subsequent assignments of error.

We are fully aware of the provisions of the Code requiring Courts to pass upon all claimed errors.

To give strict application to this statutory provision might in some instances result in having determined one of the essential questions involved in the litigation, whereas, in the instant case, we determine that such issue may not be passed upon due to the fact that there is no justiciable issue.

The judgment of the trial court will be reversed and plaintiff's petition dismissed. Costs in this Court will be adjudged against the appellee.

Cause remanded for collection of costs and such further proceeding as may be required by law.

HORNBECK, J., concurs.
GEIGER, J., concurs in judgment.