NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff, v. SIMPSON, Defendant.

Common Pleas Court, Trumbull County.

No. 64784.   Decided July 19, 1956.

Hoppe, Day & Ford, By Day and Hewitt, on behalf of plaintiff.

Leo A. Keating, Steven Robinson, Clarence Klinger, on behalf of defendant.

## OPINION

By BIRRELL, J.

At the close of Plaintiff's evidence in this case Defendants John Manley and Warren Zone Cab Company moved for judgment in their favor and likewise demurred to the pleadings and proof, both of which Motions were overruled.   In their final Brief they have renewed their "Motion for judgment dismissing the case as to these two Defendants

for the reason that no justifiable controversy exists between them and Plaintiff Company."

This is an action for a Declaratory Judgment wherein Plaintiff prays that the Court finds, among other things, "that the Defendants or any of them have no rights thereunder (Policy 92R-176-050) and no claims against this Plaintiff." Plaintiff alleges that it had written a policy of accident insurance in favor of Defendant Francis E. Simpson; That Plaintiff had given notice to her of cancellation of such policy to be effective March 18th, 1955: that she had had an accident on March 27th., 1955, in which Defendants John Manley and Warren Zone Cab Company had suffered injury or damage, the former of which had already brought suit against her, and that Defendant, Simpson, had referred "such action to this Plaintiff for defense in her behalf." The question presented to the Court is what, if any, right or rights do these Defendants have under the contract of insurance.

The pertinent Statutes on the subject of Declaratory Judgment follow:

"Courts of record may declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceedings is open to objection on the ground that a declaratory judgment or decre is prayed for." Sec. 2721.02 R. C.

"Any person interested under a * * * written contract, or other writing constituting a contract, or whose rights, status or other legal relations are affected by a * * * contract * * * may have determined any question of construction or validity arising under such * * * contract * * * and obtain a declaration of rights, status or other legal relations thereunder:" Sec. 2721.03 R. C.

"Secs. 2721.03 to 2721.05, inclusive, R. C., do not limit or restrict the exercise of the general powers conferred in §2721.02 R. C., in any proceedings where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty." Sec. 2721.06 R. C.

"When declaratory relief is sought all persons shall be made parties who have or claim any interest which would be affected by the declaration. No declaration shall prejudice the rights of persons not parties to the proceedings." Sec. 2721.12 R. C.

From the foregoing Statutes the Court naturally would be inclined to believe that Defendants Manley and the Cab Company having acquired a right of action against Defendant Francis S. Simpson, are interested in whether or not she carries insurance to cover her liability, if any, for personal or property damage. Should it be found that such insurance had been cancelled and was not in force at the date of the collision, their interest, under §3929.06 R. C., "would be affected by the declaration." Consequently under the provisions of §2721.12 R. C., above, they "have" an interest which Defendant Manley has already asserted by filing suit against Defendant Simpson, and which Defendant Cab Company may assert within the statutory time.

These two Defendants in support of their Motion rely on the following authorities, to-wit:

**Schroeder v. Lewis, 27 Abs 430.** No mention is made in this case of Defendants other than the holder of the note and mortgage concerning the status of which the declaration of the Court is prayed. In fact the Court says @ p. 433: "Thus, by this petition you have doubtful legal relations posted, and by permitting the debtors, Plaintiffs herein, to institute this action, seeking a conclusive definition of the terms or conditions of the debt, the purpose of the Uniform Declaratory Judgments Act is fulfilled and brought in action."

**Driskill v. Cincinntai, 34 Abs 55.** The Court found that there was no "real controversy between the parties that is justiciable." @ p. 57. "The petition merely pleads the ownership or possession of certain instruments and devices which 'could' be used for gambling and which 'might' be kept for such purpose."

**Hammontruee v. Hawley, 40 Abs 483.** From the evidence the Court found that there was no threat of revocation of license and therefore no 'actual controversy presenting a justifiable dispute.'

**Ohio Farmers v. Heisel, 143 Oh St 519.** This case was decided on Demurrer which admitted the construction of the words of the policy and presented a question "merely of the fact as to whether at the time of the collision the automobile was being driven with the permission of the insured." (P. 522.)

The Ohio Farmers case is referred to in the later case of **Travelers Indemnity Co. v. Cochrane, 155 Oh St 305,** @ p. 313 as follows:

"This Court in the case of Ohio Farmers Insurance Company v. Heisel * * * held that the declaratory judgment procedure may not be used to determine a mere isolated question of fact which has nothing to do with the 'construction or validity' of an insurance policy, but the Court did not hold that facts may not be determined from which legal conclusions may be reached as to the validity of an insurance contract. In the instant case, the question for determination is whether certain alleged acts of Cochrane constituted a breach of the insurance contract, and, if so, whether the contractual relation still exists."

All members of the Court concurred in the judgment and the Opinion in this later case, as they had in the Ohio Farmers case, and find that from a consideration of all the evidence the Court must determine the status of the parties. It appears that this is what this Court is required to do in our present situation.

Of course the interest of Defendants Manley and the Cab Company depends entirely on the status of Defendant Simpson. Their respective claims, if any, came into being after the alleged date of the claimed cancellation (3/18/55) and depend upon whether the policy was in force on the date of the collision (3/27/55). The Court still believes that they have an interest which will be affected by the decision in this case; and that their Motion to be dismissed should be overruled.

Respecting the question of cancellation of the Policy on March 18th, the contract (policy) provides at paragraph 21 of its conditions:

"This policy may be cancelled by the Named Insured by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by

mailing to the Named Insured at the address shown in this policy, written notice stating when, not less than ten days, thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured, or by the Company shall be equivalent to mailing."

"If the Named Assured cancels, earned premiums shall be computed in accordance with the customary short rate table, and procedure. If the Company cancels, earned premiums shall be computed pro rata. Premium adjustments may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check, or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Named Insured."

In accordance with this provision the Company had, on or about March 4th, 1955 mailed to the Named Insured, Francis E. Simpson, a notice of cancellation of the Insurance to take effect March 18th, 1955, which notice the Named Insured received. Under this provision of the policy, therefore, the insurance ceased on that date.

There is no dispute in the law on this point; **Gibbons v. Kelley, 156 Oh St 163; Plotner v. Buckeye Union Casualty Co., 94 Oh Ap 94.**

Defendants claim however that the Insurance was still in effect on the date of the collision, for the claimed reason that the Company had waived the cancellation of the policy by accepting the premium thereon after March 18th. This brings the entire background of the issuance of Policy 92R-176-050 into the picture.

Francis E. Simpson's husband (Charles S. Simpson), had been doing business with the Farm Bureau Company previous to the date of this policy. On April 14th, 1954, he had borrowed $741.95 from the Second National Bank securing the note by mortgage on a Kaiser automobile. In order to protect itself the bank had required him to take out a policy of collision insurance (92R-99-602) with the Farm Bureau for which the Bank paid the sum of $81.50, sufficient to keep the coverage in force until July 19th, 1955, when under the payment plan contained in the note the loan would be repaid. On January 4th, 1955 the Second National Bank returned the policy (a substituted policy as hereinafter explained) for cancellation, advised the Farm Bureau that the car had been surrendered to it, and requested refund of the balance of the premium theretofore paid by it. The Company, thereupon, cancelled the insurance and refunded to the Bank the unused portion of the premium in the amount of $28.30.

On September 25th, at the request of Charles S. Simpson, a new policy (92R-162-955) was issued in place of the above policy which included Property Damage, Bodily Injury and Medical Payment insurance in addition to the original Collision Insurance. Simpson paid the additional premium thereon in the amount of $9.13 which paid that portion of that policy only to October 19th., 1954, the date of the six month expiration of the original policy (92R-99-602), and this policy was for-

warded to the Second National Bank, the lien of which, likewise, was shown therein (this is the substituted policy returned for cancellation above stated).

It further appears that through error, and again on request of Charles S. Simpson, this policy (92R-162-955) had been cancelled on the Insurance Company's records under date of November 12th, 1954 and its then unearned premium on the collision insurance had been used, in paying the premium on a new policy, 92R-176-050, which at that date was issued to Francis E. Simpson for the purchase of both property damage, Bodily Injury and Medical Payment insurance on her Chevrolet Sedan. (Collision insurance for the 1951 Kaiser was not included therein.) No money of any kind was paid on this policy either by Francis E. Simpson or by Charles S. Simpson. The policy was written from November 12th, 1954 to April 19th, 1955 (again the six month expiration date of the original Kaiser Collision policy), and the Company refunded to Francis E. Simpson (not to the Second National Bank), the balance of the unearned collision premium in the amount of $20.17.

When the Farm Bureau received the Insurance Policy (92R-162-955) from the Second National Bank, in January 1955, investigation of their records revealed their mistake in cancelling this policy on November 12th of the previous year and in transferring the remaining value thereof to pay the premium of Francis E. Simpson's policy (92R-176-050). Realizing their obligation to make refund to the Bank, check was mailed it as above stated. In correcting this mistake it found also that no payment had been received from Francis E. Simpson on her policy. Notice of cancellation was malied her, explaining the company's mistake and stating "This letter is notice that policy No. 92R-176-050 is cancelled, effective 12:01 A. M. March 18th., 1955, unless your check or money order has been received by that date." The letter carefully explained that she had improperly received credit for the unearned premium of the Bank's collision protection from November 12th, 1954. That the Bank was entitled to have continued to receive such protection until it had asked for cancellation on January 4th, 1955 (costing $7.13), and that the remainder not used in paying premium on Francis E. Simpson's policy to April 19th (amounting to $20.17) had been inadvertently paid to her instead of to the Bank as above set forth.

Mrs. Simpson failed to pay any portion of her delinquent premium before March 18th thereby allowing the cancellation to take effect according to the notice.

To this point, and at this date, regardless of the various errors of bookkeeping on the part of the Company, their right to cancel this policy, for which no payment had been made, cannot be challenged.

Defendant's claim of waiver rests upon two payments made to the Company under dates of March 28th, and April 13th as follows:

On the next day after the accident of March 27th., a payment of $7.13 was made at the Company's office. This payment was not sufficient to pay the entire premium on her policy. At most it was sufficient to pay exactly the balance of the premium for collision coverage due on the Bank's cancelled policy to January 4th., as had been explained in the

letter written Mrs. Simpson March 4th. The receipt for this payment was marked "New Pol." but no new policy was taken out at that time. By reason of the exactness of amount with that explained in the March 4th notice the Court is inclined to believe that this small payment was in the nature of an attempt by the Simpsons after the accident to reinstate her policy. The amount was totally insufficient for that purpose. No provision of the policy nor custom of the Company was shown which would authorize reinstatement of a cancelled policy without receipt of payment therefor and some agreement with respect thereto. At all events this amount was clearly a past due debt of Francis Simpson to the Insurance Company for insurance from November 12 to January 4th, and a payment to which the Company was entitled without affecting its cancellation of the policy.

Defendants also present receipt for the sum of $24.40 dated April 13, 1955, marked "Policy Number 92R-176-050, date due 4/19/55," and claim that this money was accepted upon the policy after its cancellation and therefore reinstates it.

The amount required for the delinquent premium was only $20.17. If Mrs. Simpson intended to pay this delinquency why should she have paid $24.40? Likewise the receipt states that the payment was for an amount to be "due 4/19/55." The delinquent payment was already past due. This due date was the date of expiration of policy No. 92R-176-050, had it not been previously cancelled. Perhaps the writer of the receipt incorrectly stated the number of the policy, but he could hardly have misunderstood the intention of person paying the same as to whether it was for a past due or a future payment.

In explanation of this payment the Company produces an application (92R-201-686) of Francis E. Simpson on April 11th for insurance on her Pontiac Coupe which she had purchaser March 31st 1955 after her accident of March 27th., the cost of which policy was exactly $24.40. That such a policy had been applied for and issued is confirmed by a letter produced by Defendant Simpson dated September 22nd, 1955 written to her by the Company and notifying her that "this policy 92R-201-686 is cancelled, effective 12:01 A. M. October 5th., 1955." Under ordinary circumstances the Court could scarcely doubt that the $24.40 was paid for the issuance of this new Pontiac policy and not for the purpose of reinstating the old cancelled policy on her Chevrolet.

The doubt in the Court's mind is raised by the fact that the Company's letter of September 22nd, contains the statement

"since no advance premium was made at the time the policy was issued to you, and no premium has been received in the meantime, there is no refund of unearned premium."

Now who is the Court to believe? The employee who received the $24.40 entered on the receipt that it was a payment due 4/19/55 on Policy Number 92R-176-505: The writer of the September 22nd letter says it was not a payment on the new policy 92R-201-686: Must it have been for reinstatement of the old Chevrolet policy which had been cancelled March 18th?

Some light is thrown on this matter by the testimony of Mrs. Francis

E. Simpson who implied that she knew practically nothing about the Pontiac policy, and by her husband Charles S. Simpson who stated that he had made both of the payments of March 28th., and of April 13th., and also stated that he had made the application of April 11th for insurance on his wife's Pontiac car. The interesting aspect of his testimony was his apparent boast that he had told the person who recorded the application for the new insurance "nothing"; that he had merely shown him the Certificate of title for the Pontiac. Nor was he any more communicative with respect to the purpose of the payments of March 27th and of April 13th. Such secretiveness may go far toward explaining the contradictory entries of the agent and clerks with respect to this Pontiac policy.

In the case of **Ohio Farmeer's Insurance Company v. Cochran, 104 Oh St 427,** the following charge was given the Jury by the Trial Court:

"If you find from all the evidence and circumstances surrounding this case that there were such acts and such conduct on the part of the Defendant (insurance Co.) by its officer, or officers, agent or agents so authorized to bind the Company, that would cause a man of ordinary judgment and discretion to believe that the formal proof of loss within sixty days would not be required, and that the same had been waived (and) that Plaintiff so believed and so acted upon such belief, the company knowing it was so leading and causing Plaintiff to so believe (this) would amount to a waiver of such proofs by acts and conduct of the Defendant Company."

This statement of the law applied to our case requires "such acts or conduct on the part of the Company that would cause a man of ordinary judgment and discretion to believe" that the Company had accepted payment of the unpaid premium for want of which the policy had been cancelled, and that "the (insured) so believed and so acted upon such belief." The requirement that acceptance of the premium be with knowledge on the part of both insurer and insured is the basis in all cases in which a waiver has been found to exist.

Defendant has cited the following cases in support of this principle, the facts of which generally follow:

**Shatter v. National Life & Accident Co., 19 Abs 216.** Continuous custom of accepting delinquent payments is shown.

**Hoffman v. Aetna Life Insurance Co., 60 Oh Ap 497.** Custom of accepting delinquent payments on group policies from employer who deducted amounts from wages, the Court holding "an insurer * * * may waive (non-payment) by a course of acts and conduct which plainly indicates an intention to treat the contract as in force."

**Mutual Life Insurance Co. v. French, 30 Oh St 240.** Agent accepted note for one-half of premium which was not paid when due. By failure to give notice of forfeiture upon such failure to pay, the Court held that it became a "question of fact for the Jury" to determine whether the company intended to waive its right of forfeiture.

**Fry v. Franklin Insurance Co., 40 Oh St 108.** Note for delinquent payment was retained by Company without notice of forfeiture of policy and correspondence on other matters with insured was had. Court held it a question for Jury whether waiver had occurred.

**Motz v. Root, 53 Oh Ap 375.** Where successive owners had assumed a mortgage, it was held that mortgagee had waived right against earlier of the owners by acquiesing in the transfers and accepting payments from later owners. The Courts' Opinion concludes (p. 380-1). "The facts constituting the waiver must be such as are calculated to lead the other party to do or omit to do what he otherwise might not have done or omitted—as to have lulled him into security when otherwise he might have taken precaution for his own protection, or have acted in some manner otherwise than he in fact did."

Kandor v. Indemnity Company, 10 O. C. C. ns 449. Agent with knowledge of applicant's health construed a question to not require answer which would have revealed previous illness, and thus disqualified applicant for insurance. Held agent thereby waived this requirement.

Coletta v. Ohio Casualty Ins. Co., 96 Oh Ap 70. Agent agreed to reinstate burglary policy without deduction for loss.

Union Insurance Co. v. Billman, 18 O. C. C. ns 261. Agent though ordered by Company to do so, failed to return to insured the overdue premium which he had received, "until 6 or 8 months after the fire and long after suit (was) brought."

**West v. Knox Township Farmers Aid Society v. Burkhart, 13 Abs 385.** "The acceptance of (an) assessment * * * even after loss suffered * * * and the treating of the insurance as in force and the levying of other assessments amounts to a waiver of the forfeiture." 1 Syl.

Cases decided by the Supreme Court, citing the case of Ohio Farmers Ins. Co. v. Cochran, supra, hold:

**Shields v. Supreme Council of the Royal Arcanum, 123 Oh St 31.** Collector had always mailed notice of payment on which insured relied. On failure to receive notice of November payment, insured paid for November and December after December notice requesting such over-due payment. Later insured died. The Court holds:

3 Syl. "Where the insurer's conduct has been such as to affirmatively induce the belief that the forfeiture is waived, a waiver exists. * * *"

**Hartford Accident & Indemnity Co. v. Randell, 125 Oh St 581, @ p. 587.** "The injured party relied on the statement of the adjuster that he would not defend (the insured) and that the attorney for the injured party need not give the required notice: * * * by that statement the injured party was induced to inaction, thereby altering the position of the injured party to his prejudice, by reason of which the insurance company is estopped from thereafter asserting its right to a compliance with the condition requiring notice to be given."

**Lind v. State Automobile Mutual Ins. Ass'n., 128 Oh St 1, 3 Syl.** "The authority of an agent to waive * * * subsequent proofs and notices may be established by showing a course of conduct on his part knowingly permitted by his insurer-principal, through which an agent has the approved power to accomplish those things he undertakes to do, so that an insured dealing with him is given reasonable grounds for believing he possesses such power" (to waive proofs and notices subsequent to loss).

**Petersilge v. Farmers Mutual Fire Ins. Co., 130 Oh St 385, 2 Syl:** "A company's mere acceptance of a delinquent assessment from a member

subsequent to his known loss does not constitute an implied waiver of (the) suspension clause when the loss occurs during the period of delinquency, and the member is not assessed for losses occurring during that time."

This case impliedly differentiates between its facts and those of the West and Knox Township Farmers Aid Society v. Burkhardt, supra.

**English v. National Casualty Co., 138 Oh St 166.** Acceptance and retention of premium after insured reaches age of 65, above which terms of policy state that the insurance will be void, constitutes waiver of this policy provision.

**Schwer v. Benefit Ass'n, 153 Oh St 312, 3rd Syl.** "* * * to effectuate * * * reinstatement (where policy provides for such procedure) it must be shown that * * * the payment was knowingly accepted * * * for the purpose of reinstatement * * *."

In his Opinion Judge Hart points out (at pp. 322-3) that a "meeting of the minds," "for the purpose of reinstating the policy" was necessary which confirms the requirement above referred to that knowledge of parties of the intention or purpose of the payment is required.

This Court does not find in the facts proven in this case that there was proof in any manner that after the payment of April 13th "the insured so believed (that the policy had been reinstated) and so acted upon such belief." Neither can the Court find proof of custom of accepting delinquent payments nor of any acts or statements of agents of the insurer which could have given Mrs. Simpson the belief that her policy was reinstated. With respect to the receipt for $24.40 endorsed "Policy Number 92R-176-050" The Court believes this was a mistake of the writer of the receipt, and that this receipt was in payment for policy 92R-201-686 which Charles S. Simpson testifies he had taken out April 11th on Mrs. Simpson's Pontiac car.

No solution other than that of error satisfactorily explains the notations accompanying the $24.40 payment. Were it assumed that the Company records must be held to be entirely unreliable, the admitted evidence of the Simpsons fails to indicate that they had changed their position in any respect or relied in any manner upon a claim of waiver. Beyond the records is the uncontradicted oral evidence admitting the issuance of the various policies, the purchase of insurance on the Pontiac and the obligation of the Company contracted and existing at the date of payment. Various of the authorities above cited hold that when there is a conflict in the evidence on the facts claimed to constitute a waiver, the matter becomes a Jury question. With no Jury in this type of case this question must rest with the Courts.

As to the statement in the letter of September 22nd, that no payment on policy 92R-201-686 had ever been made, there seems no satisfactory explanation for this statement other than carelessness on the part of the writer of the letter, inefficiency of the office in maintaining their records, or absence of a system or method of reports between the Home and Local offices. It is true that the application of April 11th states that no payment was made with the application, which might have been referred to by the writer with the further careless exaggera-

tion that no payment was ever made. It seems a careful company would not have carried coverage for 5½ months without investigating to determine whether payment had been made. Perhaps there is refund due Mrs. Simpson for the 6 days from October 5th to 11th, during which the coverage was cancelled. If so such refund should be made. At least this Court in weighing the evidence with the law as above analyzed cannot find that this error over-balances the lack of proof of any intention on the part of Simpson to reinstate policy 92R-176-050, nor of the company to accept the payment for that purpose.

The conclusion reached is that the preponderance of the evidence is against the claim that any waiver has been shown. A Declaratory Decree may be drawn, therefore, in Plaintiff's favor and at Plaintiff's costs.