PEOPLE v WALLACE

Docket No. 101348. Submitted October 13, 1988, at Lansing. Decided
    December 5, 1988.

> Darryl Wallace was charged with two counts of larceny from a
> person and two counts of assault and battery. The alleged
> victim was defendant's wife. Following a preliminary examina-
> tion in the 12th District Court, the examining magistrate
> dismissed the larceny charges, ruling that the common-law rule
> providing that no crimes of property can exist between spouses
> has not been abrogated with the passage of Const 1963, art 10,
> § 1 and MCL 557.21(1); MSA 26.165(1)(1), which are collectively
> known as the married women's property acts. Defendant pled
> guilty to the assault and battery charges and the people filed
> with the Jackson Circuit Court an application for leave to
> appeal the dismissal of the larceny charges. The circuit court,
> James G. Fleming, J., denied the application. The people sought
> and were granted leave to appeal in the Court of Appeals.
>
> The Court of Appeals *held:*
>
> The married women's property acts abolished the disabilities
> of coverture and gave married women the power to protect,
> control and dispose of property in their own name, free from
> their husbands' interference. The acts have consequently abro-
> gated the common-law rule that a husband could not be prose-
> cuted for larceny from his wife.
>
> Reversed.

HUSBAND AND WIFE — LARCENY — LARCENY FROM A PERSON.

> The common-law rule that a husband could not be prosecuted for
> larceny from his wife has been abrogated with the passage of
> the married women's property acts, which acts abolished the
> disabilities of coverture and gave married women the power to
> protect, control and dispose of property in their own name, free
> from their husbands' interference (Const 1963, art 10, § 1; MCL
> 557.21[1]; MSA 26.165[1][1]).

*Frank J. Kelley,* Attorney General, *Louis J.*

REFERENCES

Am Jur 2d, Husband and Wife §§ 4, 17 109 *et seq.*
See the Index to Annotations under Husband and Wife.

*Caruso,* Solicitor General, *Joseph S. Filip,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Chief Appellate Attorney, for the people.

Before: BEASLEY, P.J., and GILLIS and W. G. SCHMA,* JJ.

GILLIS, J. Defendant was originally charged with two counts of larceny from a person, MCL 750.357; MSA 28.589, and two counts of assault and battery, MCL 750.81; MSA 28.276. The defendant and the victim were married on September 6, 1986. At the preliminary examination, the victim testified that she was staying with her mother although she had not moved out of the couple's apartment. On February 4, 1987, defendant came to the victim's place of employment and told her that he wanted "his money." Apparently, the couple had received insurance proceeds to cover the cost of some items which had been stolen from their apartment. Although the victim admitted that both she and defendant worked, she claimed that she paid the bills.

After defendant demanded "his money," he and the victim argued. Defendant then "snatched" a gold chain off the victim's neck. The victim had received the chain as a gift from a male friend during her marriage to defendant. Defendant then dragged the victim through the hall. As the victim stood in the hall, defendant ran to where she kept her purse and took it. Defendant then called the victim names and left.

Thereafter, the victim moved back in with defendant. Defendant returned the purse and the chain at the victim's request. However, the couple's marital bliss was short-lived and the victim moved out of the apartment before February 12,

* Circuit judge, sitting on the Court of Appeals by assignment.

1987, taking the furniture, which she claimed she had paid for, with her.

On February 12, 1987, the defendant again entered the victim's place of employment and took her purse. Defendant then "snatched" the gold chain off her neck. Defendant also slapped the victim before leaving.

The district court dismissed the larceny from a person charges against defendant, holding that the so-called married women's property acts, Const 1963, art 10, § 1 and MCL 557.21(1); MSA 26.165(1)(1), were not intended to abrogate the common-law rule that there were no crimes of property between spouses. The district court relied on *Snyder v People,* 26 Mich 105 (1872), to support its decision.

The issue in *Snyder* was whether a husband could be convicted of arson for burning a house in his wife's name even though they lived there together. At that time, the arson statute required the burning of " 'the dwelling house of another.' " *Id.* at 106 (quoting Comp L § 5745). Noting that arson was "an offense against the habitation, and regards the possession rather than the property," the Court stated that, under common law, a husband, living with his wife, had rightful joint possession of a house which she owned and, therefore, could not be guilty of arson. *Id.* at 106-107. The Court then turned to the issue of whether the married women's property acts affected this outcome. The Court held:

> The statutes upon which the question arises, are those for the protection of the rights of married women. But it is to be observed, that those do not in terms go beyond the ensuring to the wife such property as she may own at the marriage, and acquire afterwards, and the giving to her the

power to protect, control and dispose of the same in her own name, and free from the interposition of the husband. None of them purports to operate upon the family relations; none of them takes from the husband his marital rights, except as they pertain to property, and none of them relieves him from responsibilities, except as they relate to the wife's contracts and debts. . . . As regards her individual property, the law has done little more than to give legal rights and remedies to the wife, where before, by settlement or contract, she might have established corresponding equitable rights and remedies, and the unity of man and woman in the marriage relation, is no more broken up by giving her a statutory ownership and control of property, than it would have been before the statute, by such family settlement as should give her the like ownership and control. At the common law, the power of independent action and judgment was in the husband alone; now it is in her also for many purposes; but the authority in her, to own and convey property, and to sue and be sued, is no more inconsistent with the marital unity, than the corresponding authority in him. She is still presumptively his agent to provide for the household, and he is not deprived of the rights, or relieved of the obligations of head of the household, except as by their dealings an intent to that effect is indicated.

So far from an intent having been manifested on the part of the legislature to regard the family as simply a voluntary association of two persons, legally independent of each other, with their progeny, several of the changes have been in the direction of a unification of interests. Thus, the husband is deprived of all authority to sell, mortgage or otherwise charge the homestead without the wife's consent, though his title thereto may be complete and absolute. He is also precluded from selling or encumbering such personal chattels as are exempt by law from execution, unless with her assent; and if he shall attempt to do so, she may bring action to recover the same in her own name.

These powers and privileges in respect to the husband's property are not conferred on the wife for her own benefit exclusively, or in order to give her interests independent of the husband; but they are given her for the benefit of the whole family, in order that they may not be deprived of the reasonable means of support which the law has endeavored to save to them, and to the end that they may be kept together as a family, if such shall be their desire. And after the death of the husband and father, the family unity is still regarded in the protection which is given to the homestead.

We have said that the wife is entitled to support at the husband's domicil, and, as we have seen, she may prevent his disposing of it. The statute has not given him a corresponding right to impede or preclude conveyances or encumbrances by the wife, but nevertheless, so long as they occupy together, he is not to be considered as being upon the premises by sufferance merely. He is there by right, as one of the legal unity known to the law as a family; as having important duties to perform, and responsibilities to bear in that relation, which can only be properly and with amplitude performed and borne while the legal unity represents an actuality; as having rights in consort and offspring which can only be valuable reciprocally while the one spot, however owned, shall be the home of all; and in many ways he still represents the family in important relations of society and government. Some of the legislation on the subject is exceedingly crude; some of it has injudiciously given powers to the wife in the disposition of property which it has prudently denied to the husband; but none of it makes the husband a stranger in law in the wife's domicil. The property is hers alone, but the residence is equally his; the estate is in her, but the dwelling-house, the *domus,* is that of both.

\* \* \*

The house, in legal contemplation, as regards

the offense under consideration, is the dwelling-house of the husband himself.

But, in so holding, we do not decide that if the family relation is broken up in fact, and husband and wife are living apart from each other, whether, under articles of separation or not, the same exemption from criminal liability can exist. There is much reason for holding that the wife's dwelling-house can be considered that of the husband, only while he makes it such in fact, and that there is no such legal identity as can preclude her house being considered, in legal *proceedings* against him, as the dwelling of "another," when it is no longer his abode. [Emphasis in original. Citations omitted. 26 Mich 107-111.]

The district court ruled that *Snyder* had held that the married women's property acts did not destroy the unity of husband and wife and, therefore, did not alter the common-law rule that crimes of property could not exist between them.

Defendant then pled guilty to two counts of assault and battery and the people filed an application for leave to appeal the dismissal of the larceny charges with the circuit court. The circuit court denied the people's application, relying on *State v Phillips*, 85 Ohio 317; 97 NE 976 (1912), which held that that state's married women's property act did not abrogate the common-law rule that neither husband nor wife could be prosecuted for larceny of the goods of the other. The circuit court also rejected the people's claim that *Snyder* was distinguishable because defendant and the victim were not living together at the time defendant committed the larcenies, holding that marital unity remained in effect despite the fact that marital harmony did not exist.

The people then applied for leave to appeal in this Court. We granted the application and we reverse.

MCL 750.357; MSA 28.589 provides:

> Any person who shall commit the offense of larceny by stealing from the person of another shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years.

Criminal Jury Instruction 23:2:01 provides that the prosecution must establish the following elements before the defendant may be convicted of larceny from a person:

> First, the property of another must have been taken.
> Second, there must have been some moving of that property whereby the defendant obtained possession and control of it. The property need not have been kept by the defendant.
> Third, the property must have been taken from the person of the complainant. "From the person" means that the property must have been taken from the body of the complainant or from within his [or her] immediate area of control or immediate presence.
> Fourth, at the time of the taking the defendant must have intended to deprive the complainant permanently of the property.
> Fifth, the taking must have been without the consent and against the will of the complainant.

At common law, a husband could not be guilty of larceny from his wife because during the marriage (coverture) a woman ceased to have control of her actions or her property and they became subject to the control of her husband. Hence, the husband could not be treated as taking the property of another if he took his wife's property because the couple was treated as one legal entity (i.e., the husband).

Today, Const 1963, art 10, § 1 provides:

The disabilities of coverture as to property are abolished. The real and personal estate of every woman acquired before marriage and all real and personal property to which she may afterwards become entitled shall be and remain the estate and property of such woman, and shall not be liable for the debts, obligations or engagements of her husband, and may be dealt with and disposed of by her as if she were unmarried. Dower may be relinquished or conveyed as provided by law.

The first sentence of this section was added in 1963.

Likewise, MCL 557.21(1); MSA 26.165(1)(1) provides:

If a woman acquires real or personal property before marriage or becomes entitled to or acquires, after marriage, real or personal property through gift, grant, inheritance, devise, or other manner, that property is and shall remain the property of the woman and be a part of the woman's estate. She may contract with respect to the property, sell, transfer, mortgage, convey, devise, or bequeath the property in the same manner and with the same effect as if she were unmarried. The property shall not be liable for the debts, obligations, or engagements of any other person, including the woman's husband, except as provided in this act.

The issue before the district court, the circuit court and this Court is whether these laws commonly referred to as the married women's property acts changed the common-law rule that a husband could not be guilty of larceny from his wife as regards the property described in those acts. Relying on the broad language used in *Snyder,* the district court ruled that a husband could not be guilty of larceny from his wife. Despite the broad language contained in *Snyder,* we read it

more narrowly than the district court did because our Supreme Court has repeatedly recognized that the married women's property acts gave married women the power to protect, control and dispose of property in their own name, free from their husbands' interference. *Snyder, supra* at 107, 110. See also *Simon v Security Ins Co,* 390 Mich 72; 210 NW2d 322 (1973); *Tillman v Shackleton,* 15 Mich 446, 455-457 (1867) (COOLEY, J., concurring);[1] *White v Zane,* 10 Mich 333 (1862); *Starkweather v Smith,* 6 Mich 377 (1859). Consequently, we agree with the people that Michigan's married women's property acts abrogated the common-law rule that a husband could not commit larceny against his wife as regards the property described in those acts. See also *Stewart v Commonwealth,* 219 Va 887; 252 SE2d 329 (1979); *People v Morton,* 308 NY 96; 123 NE2d 790 (1954); *Whitson v State,* 65 Ariz 395; 181 P2d 822 (1947); *State v Herndon,* 158 Fla 115; 27 So 2d 833 (1946); *Hunt v State,* 72 Ark 241; 79 SW 769 (1904); *Beasley v State,* 138 Ind 552; 38 NE 35 (1894). But see *State v Arnold,* 182 Minn 313 ; 235 NW 373 (1931); *Phillips, supra.*[2] Hence, defendant could be properly bound over on the charges of larceny from a person for taking from his wife a chain which was given to her during the couple's marriage as a gift.

Reversed.

---

[1] Justice COOLEY also authored *Snyder v People,* 26 Mich 106 (1872).

[2] Ohio does allow spouses to be charged with robbery, *State v Carlisle,* 80 Ohio Law Abs 33; 181 NE2d 517 (1961), or burglary, *State v Herrin,* 6 Ohio App 3d 68; 453 NE2d 1104 (1982).