CANJAR v COLE

Docket No. 282237. Submitted April 8, 2009, at Detroit. Decided May 14, 2009, at 9:00 a.m.

Gregory A. Canjar brought an action in the Lapeer Circuit Court against Roger D. Cole and Darlene L. Lamb, seeking to quiet title in his favor by adverse possession to a strip of land that the defendants held by deed and that adjoined the plaintiff's property. The court, Nick O. Holowka, J., quieted title in the defendants, concluding that although the plaintiff met all the requirements for an adverse possession claim, the plaintiff's former wife had not satisfied the hostile intent element. The court ruled that the plaintiff's wife had to meet the requirements for an adverse possession claim because she had held the plaintiff's property as a tenant by the entirety during her marriage to the plaintiff. The plaintiff appealed.

The Court of Appeals *held*:

1. When real property is held under a tenancy by the entirety, neither spouse can convey, encumber, or alienate the property without the consent of the other.

2. A plaintiff, in order to establish a claim of adverse possession, must provide clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for 15 years. The 15-year period begins when the rightful owner has been disseised of the land. Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership.

3. Nothing in the intent and purpose of the tenancy by the entirety supports a conclusion that both spouses must meet the requirements of adverse possession in order for one spouse to individually append property adjoining property held by the spouses under a tenancy by entirety. Because the additional property is outside the boundaries of the entirety property, the principles applicable to entirety property requiring spouses to act jointly do not apply.

Reversed and remanded for an order quieting title in the plaintiff; monetary award to defendants as prevailing parties vacated.

ADVERSE POSSESSION — TENANTS BY THE ENTIRETY — SPOUSES AS ADVERSE
   POSSESSORS.

   It is not necessary for both spouses who hold property under a
   tenancy by the entirety to satisfy the elements of adverse posses-
   sion when one spouse claims adverse possession of adjoining
   property; only the claimant has to satisfy the elements.

*Gary J. Canjar*, for the plaintiff.

*Taylor, Butterfield, Riseman, Clark, Howell, Church-hill & Jarvis, P.C.* (by *Carl M. Riseman*), for the defendants.

Before: ZAHRA, P.J., and O'CONNELL and K. F. KELLY, JJ.

PER CURIAM. In this quiet title action, we must determine whether plaintiff-husband and his nonparty, former wife who owned property by the entirety must both have had "hostile" intent for plaintiff to individually adversely possess property abutting the property held by the entirety. Following a bench trial, the trial court determined that plaintiff met all the elements required to sustain a cause of action for adverse possession, but concluded that the nonparty former wife's lack of hostile intent during the required statutory period destroyed the plaintiff's claim of adverse possession and created a valid defense for defendants. Plaintiff appeals as of right, and we reverse. We hold that an adverse possessor who seeks to append property to property that he or she holds by the entirety with his or her nonparty spouse may adequately satisfy the requirements of adverse possession individually regardless of the intent of the nonparty spouse.

### I. BASIC FACTS AND PROCEDURAL HISTORY

This lawsuit arises out of a dispute over a triangular-shaped parcel of property located along the boundary of

plaintiff's and defendants' properties and measuring approximately 0.46 acres. Plaintiff and his now ex-wife, Daryl Snow, had purchased a 10-acre parcel of land in 1976 and held the property as tenants by the entirety. Plaintiff and his wife began living on the property in 1980. Defendant Darlene Lamb purchased the property to the north of plaintiff's property in 1988; Lamb and defendant Roger Cole had initially rented the property from the previous owner and had resided on the property since 1984. In 1993, a warranty deed was issued to both Lamb and Cole. A creek and tree line creates a natural boundary between plaintiff's and defendants' properties. The disputed property lies on plaintiff's side of the creek but was owned by defendants pursuant to the terms of their deed.

Starting shortly after their purchase of the 10-acre property, plaintiff began "bush-hogging" and mowing the disputed land. Plaintiff cleared and maintained his land, including the disputed parcel, all the way to the creek and the tree line. Plaintiff knew that he was on defendant's property when maintaining the land all the way to the creek and tree line. Plaintiff nonetheless continued to use the disputed property almost every day or every other day in some way. Plaintiff had a garden on the disputed parcel for about six years, planted some trees there in 1977, had a doghouse on it for several years, burned trash there once or twice a week, and stored various personal property, including vehicles, on the disputed land. In addition, plaintiff created a baseball and soccer field for his children on the disputed area, and his wife used the area to play with the children and tend a strawberry garden.

A fire that occurred on the disputed property in spring 2004 precipitated the current litigation. Plaintiff accidentally set fire to some of the trees he had planted

on the disputed property while he was burning leaves, and defendant Cole allegedly came onto the property complaining that plaintiff had burned his trees. Cole threatened to file a complaint, and plaintiff filed this lawsuit seeking to quiet title to the disputed parcel in himself on a theory of adverse possession.

After a lengthy pretrial process, the matter proceeded to a bench trial. Plaintiff testified that he conducted his activities on the property with the intent of claiming the land for his own although he knew he did not own the parcel. Plaintiff also stated that he never saw defendants on the disputed property, they never told him to stop using the disputed property, and they never removed any of his personal property from the area. Plaintiff also never asked for, or received, permission to use the property.

Plaintiff's friend, Richard Nash, corroborated plaintiff's trial testimony that plaintiff used the disputed property as his own. According to Nash, he helped plaintiff plant some large trees in the disputed area, cleared brush with a chain saw from the land, saw vehicles on the disputed area, and noticed that plaintiff maintained his property up to the creek. Plaintiff's wife, Snow, whom he divorced sometime in 2002, also confirmed plaintiff's actions on the disputed land. Snow testified that she quitclaimed her interest in the 10-acre property to plaintiff after the divorce, thereby destroying the tenancy by the entirety. Snow testified that plaintiff was on the disputed property weekly since 1980, until she moved out in 2003, and that they maintained the property all the way to the creek line to make it "look nice." She stated that it would be open and obvious to a casual observer that she and plaintiff were occupying the property. Snow also testified that it was never the "spirit of [her] heart to ever take any-

thing that was not [hers]" and that she "never had intentions" to own the disputed property.

Lamb disputed that any vehicles had been parked on the property or that any other personal property had been placed there. Lamb asserted that she used the property on a regular basis and that it was never mowed until 1997. She testified that she and her children would walk through the disputed area on "many" occasions, using it for hunting, snowmobiling, and riding dirt bikes. She also testified that her children played in the riverbed in the summer.

After closing arguments, the trial court quieted title in defendants. The trial court reasoned that although plaintiff had met all the requirements of adverse possession, plaintiff's claim nonetheless failed because Snow did not intend to adversely possess the property. In the trial court's view, because plaintiff and Snow had owned the 10-acre property as tenants by the entirety, Snow was also required to act with hostile intent in order for plaintiff to prevail on his claim of adverse possession. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo actions that are equitable in nature, such as quiet title actions, but the trial court's factual findings are reviewed for clear error. *Sackett v Atyeo*, 217 Mich App 676, 680; 552 NW2d 536 (1996). Conclusions of law are also reviewed de novo. *Ambs v Kalamazoo Co Road Comm*, 255 Mich App 637, 651; 662 NW2d 424 (2003).

## III. QUIET TITLE ACTION

Plaintiff argues that the trial court erred by ruling that both husband and wife must have the same intent

to adversely possess a parcel of property adjoined to property they hold by the entirety in order for one spouse individually to lay claim to the disputed property through adverse possession. We agree. Because our determination addresses married individuals' rights and the purpose of the tenancy by the entirety, as well as the nature of an adverse possession claim, we find it necessary to first discuss these concepts as they have developed in Michigan.

### A. MARRIAGE AND INDIVIDUAL SPOUSES' RIGHTS

It has long been recognized that a married man has the right to hold and manage property held individually, obtained before or after marriage. See *Burdeno v Amperse*, 14 Mich 91, 92 (1866); *Schmoltz v Schmoltz*, 116 Mich 692; 75 NW 135 (1898); *Trabbic v Trabbic*, 142 Mich 387; 105 NW 876 (1905); *Le Blanc v Sayers*, 202 Mich 565; 168 NW 445 (1918). Married women did not always enjoy these same rights because, at common law, the power and independent authority to act was vested in the husband alone. See *Snyder v People*, 26 Mich 106, 109 (1872). In other words, once married, a woman ceased to have control or authority over her actions or her property because they became subject to the control of her husband. *Burdeno, supra* at 92; *People v Wallace*, 173 Mich App 420, 426; 434 NW2d 422 (1988). A wife could not manage or own her own property, could not enter into contracts, and could not sue in her own name. *Burdeno, supra* at 92. "In short, she lost entirely all the legal incidents attaching to a person acting in her own right [and the] husband alone remained *sui juris*, as fully as before marriage." *Id.*

Eventually, however, a set of mandates came into being, termed the married women's property acts, which "gave married women the power to protect,

control and dispose of property in their own name, free from their husbands' interference." *Wallace, supra* at 428, citing *Snyder, supra* at 107, 110. Const 1963, art 10, § 1, abolished what was known in the former common law as "disabilities of coverture," or a married woman's incapacity to enter into a binding contract. That provision provides:

> The disabilities of coverture as to property are abolished. The real and personal estate of every woman acquired before marriage and all real and personal property to which she may afterwards become entitled shall be and remain the estate and property of such woman, and shall not be liable for the debts, obligations or engagements of her husband, and may be dealt with and disposed of by her as if she were unmarried. Dower may be relinquished or conveyed as provided by law.

Similarly, MCL 557.21(1) provides:

> If a woman acquires real or personal property before marriage or becomes entitled to or acquires, after marriage, real or personal property through gift, grant, inheritance, devise, or other manner, that property is and shall remain the property of the woman and be a part of the woman's estate. She may contract with respect to the property, sell, transfer, mortgage, convey, devise, or bequeath the property in the same manner and with the same effect as if she were unmarried. The property shall not be liable for the debts, obligations, or engagements of any other person, including the woman's husband, except as provided in this act.

See also *Manufacturers Nat'l Bank v Pink*, 128 Mich App 696, 699-700; 341 NW2d 181 (1983) (recognizing married women's independent right to contract).

Consequently, married women's rights became coterminous with married men's rights and, today, *each* spouse has the power and authority to independently exercise his or her rights free of the other spouse's

interference. See MCL 557.21; *North Ottawa Community Hosp v Kieft,* 457 Mich 394, 406; 578 NW2d 267 (1998). And, although many legal structures remain intact for the purpose of protecting the marital estate, e.g., the tenancy by the entirety discussed below, nothing in the law today functions to prevent one spouse from acquiring property in an individual capacity without the consent of the other.

### B. TENANCY BY THE ENTIRETY

With the rights of married spouses in mind, we now turn to the tenancy by the entirety. "A tenancy by the entirety is a type of concurrent ownership in real property, which is unique to married persons." *Tkachik v Mandeville,* 282 Mich App 364, 370; 764 NW2d 318 (2009). This type of concurrent ownership, which also derived from English common law, is intended to protect the martial estate. *Id.* This Court discussed the nature of property held by the entirety in *Rogers v Rogers,* 136 Mich App 125, 134; 356 NW2d 288 (1984):

> The classic basis for the tenancy by the entireties was the concept that "the husband and wife are but one person in the law". In a true tenancy by the entireties, each spouse is considered to own the whole and, therefore, is entitled to the enjoyment of the entirety and to survivorship. When real property is so held as tenants by the entireties, neither spouse acting alone can alienate or encumber to a third person an interest in the fee of lands so held. Neither the husband nor the wife has an individual, separate interest in entireties property, and neither has an interest in such property which may be conveyed, encumbered or alienated without the consent of the other. [Citations omitted.]

Stated more succinctly, when a husband and wife choose to hold property by the entirety, neither spouse may individually convey, encumber, devise, or alienate that property without the consent of the other spouse.

Rather, the property is protected from one spouse acting alone to accomplish these types of transactions.

### C. ADVERSE POSSESSION

Whereas the tenancy by the entirety is a type of concurrent ownership, adverse possession is a type of claim. This doctrine was adopted in our legal system from English common law. Sprankling, *The antiwilderness bias in American property law*, 63 U Chi L R 519, 537-540 (1996). The underlying philosophy of a claim for adverse possession is to encourage land use, as it favors the productive use of land over its disuse. *Id.* The import of this doctrine, as this Court has recognized, "is against a party who has had rights that have not been asserted for an extended period of time to the detriment of another." *McGee v Eriksen*, 51 Mich App 551, 559; 215 NW2d 571 (1974).

Accordingly, Michigan law has sanctioned a claim that permits the otherwise unlawful taking of property initially owned rightfully by another. MCL 600.5801. In order to establish a claim of adverse possession, a plaintiff must provide "clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years." *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993). The 15-year period begins when the rightful owner has been disseised of the land. MCL 600.5829. "Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership." *Kipka, supra* at 439. In addition, a plaintiff must also show that the plaintiff's actions were "hostile" and "under claim of right," meaning that the use is "inconsistent with the right of the owner, without permission asked or given, and which use would entitle

the owner to a cause of action against the intruder." *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006) (quotation marks and citation omitted).

### D. APPLICATION

Turning to the instant case, plaintiff argues that the trial court erred by quieting title in defendants because it found that Snow did not have the hostile intent necessary to adversely possess the disputed property, which, in the trial court's view, was necessary because plaintiff and Snow owned the adjoining property by the entirety. We agree with plaintiff.

The trial court concluded that plaintiff had met all the requirements, except that his former wife had expressed no hostile intent or claim of title,[1] and therefore plaintiff's claim failed. The trial court reasoned as follows:

> The Court is satisfied that based upon the testimony here that anyone driving up the driveway of the Canjar residence . . . would make the natural assumption that that parcel of property belongs to the Canjar's [sic] living at 3203 Muir Road. They mowed it. They took care of it. They did all things necessary to exercise dominion, control and everything else over that particular piece of property. The Court is satisfied that the property was down a hill or slope. There was a tree line. They really didn't see it. It was difficult for them to see even though they may have driven by on a regular basis because they lived right there. The Court is satisfied that . . . the Canjars exercised visible open, notorious, exclusive possession of that property.
>
> The issue now becomes was there a claim of right. The Court's position in this matter is that the property that this .46 acres is to be appended to is property that is owned by

---

[1] We note that defendants did not cross-appeal the trial court's other factual findings and, therefore, we do not address the validity of those findings on appeal.

the entireties by Mr. and Mrs. Canjar at the time they bought the land, . . . and the case law is ample where under Michigan law both the husband and wife have a single cause of action for damages to entireties property. Neither the husband nor wife, acting alone, may convey or contract to convey to a stranger, property held by both of them as tenants by the entireties.

The reason that's important is because one of the owners of the 10 acres . . . , Miss Daryl Canjar, now known as Daryl Snow, clearly testified that she knew the Coles had superior title, that she only took care of it to make it look nice, to make it look neat, to have someplace for the children to play, even some of the Cole children played on it. She was clear in regard to that. So the owner of the property has to have—the claim has to be hostile in regard to both. And she acknowledged that it wasn't hostile. She knew they had a claim of right. . . . So with that said, with her position and based upon the Rogers case, the St[e]rrett[2] case and all the other things I've talked about, there is no 15 years . . . .

Again, in order to have the entire 15 years of adverse possession tacked, that's one thing. Now, again, Mr. Canjar, I know your argument is that if the property was located somewhere else and Mr. Cole drove to a cottage—that's not the issue. The issue is that piece of property is abutting the property that was held by the entireties. The fact that Mrs. Canjar did not have the same state of mind as being notorious, hostile, claim of right, defeats your client's 15 years in regard to this matter. . . .

\* \* \*

Again, I heard your argument about the husband's claim and people mowing the grass. I hope you were being facetious, Mr. Canjar, because those aren't the facts the Court is looking at here. So in regard to those positions the

---

[2] See *Rogers, supra*; *Estate of Sterrett v Watson*, unpublished opinion per curiam of the Court of Appeals, issued January 15, 2004 (Docket No. 241996).

Court is satisfied that the 15 years have not been met because the owners of the entirety did not, together, express notorious, exclusive or hostile or claim of right to said .46 acres.

The trial court erred. The doctrine of adverse possession simply does not require an analysis of how other owners, who own other land in conjunction with a plaintiff and which property abuts the disputed parcel, treated the disputed land.[3] Significantly, the elements of adverse possession are silent with respect to whether the adverse possessor owns other land, adjoining or not, and whether the adverse possessor holds such land jointly, by the entirety, or singly. In our view, it cannot be more plain that the entire focus of a claim for adverse possession is the adverse possessor's actions on, and intent with respect to, the land he or she seeks to adversely possess during the statutory period, as well as the rightful owner's actions and uses with respect to the disputed land. See *Kipka, supra* at 439; *Wengel, supra* at 92-93. Thus, whether the adverse possessor owns other land to which he seeks to append the disputed property is immaterial and, consequently, irrelevant to an adverse possession analysis. Further, nothing in the doctrine of adverse possession is inconsistent with permitting one spouse individually to adversely possess land abutting land that is owned by the entirety, although the other spouse may not have had the same hostile intent.

Equally significant is that nothing in the character of the tenancy by the entirety justifies the trial court's conclusion of law. Nothing in the intent and purpose of this type of concurrent ownership permits us to conclude, as the trial court did, that both spouses must

---

[3] We note that if Snow had been a plaintiff, there is no question that her intent would matter.

meet the requirements of adverse possession in order for one spouse to individually append an adjacent parcel of property to property that is held by the entirety. The nature and purpose of this type of concurrent owner-ship do not support this proposition. Rather, because the additional property is outside the boundaries of the entirety property, the principles applicable to entirety property requiring that spouses act jointly, see *Rogers, supra* at 134, simply do not apply and are irrelevant. As such, this type of concurrent ownership provides no restriction on the acquisition of additional property through adverse possession by one spouse, regardless of whether the disputed parcel is attached to the entirety property, or whether the nonparty spouse agrees with the other spouse's activities in attempting to adversely possess property.

Accordingly, we hold that in order for one spouse to claim adverse possession of property that abuts prop-erty owned by the entirety, it is not necessary that both spouses have the same intent to adversely possess the parcel as long as the plaintiff can singly satisfy all the elements of adverse possession. A decision contrary to our holding would imply that married persons cannot acquire property as individuals, which is obviously contrary to established law that each spouse is free to acquire property independently and without the inter-ference of the other spouse. See Const 1963, art 10, § 1; MCL 557.21; *North Ottawa Community Hosp, supra* at 406. Thus, plaintiff certainly did not need his spouse's permission, consent, or even complicity to adversely possess the disputed parcel. Plaintiff's actions alone were sufficient. As the trial court found, plaintiff satis-fied the hostility requirement, as well as all other elements of adverse possession. The judgment quieting title in defendants was entered in error.

Lastly, we note that the court's statement that Michigan caselaw provides that "both husband and wife have a single cause of action for damages to entireties property" and that neither may act alone in conveying or contracting to convey entirety property is clearly inapplicable to the present matter. Plaintiff's claim did not involve a claim of damages, or conveyance, or encumbrance with respect to the 10-acre property.

In light of our conclusion, it is unnecessary for us to address plaintiff's remaining claims. However, to the extent that defendants were awarded $517.48 because they were the prevailing parties, we vacate that award because defendants are no longer the prevailing parties.

Reversed. Remanded for entry of an order quieting title to the disputed property in plaintiff. We do not retain jurisdiction.