*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

FRIENDSHIP JACKSON, LLC,

        Plaintiff-Appellant,

v

FRIENDSHIP FOREST PARK LIMITED
DIVIDEND HOUSING ASSOCIATION and
FRIENDSHIP FOREST PARK CORPORATION,

        Defendants/Cross-Defendants-
        Appellees,

and

HOUSING INVESTORS LIMITED BY NAPICO
GP, LLC,

        Defendant/Cross-Plaintiff-Appellee.

UNPUBLISHED
February 20, 2020

No.   345765
Wayne Circuit Court
LC No.   17-011553-CB

---

Before:  GLEICHER, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

In this case involving claims arising from an unconsummated purchase agreement for the purchase of a housing development, plaintiff, Friendship Jackson, LLC, appeals as of right the trial court's order granting summary disposition in favor of defendants, Friendship Forest Park Limited Dividend Housing Association (LDHA), a limited partnership, and its general partner, Friendship Forest Park Corporation (FFPC) ("defendants").  We affirm.

## I.  BACKGROUND

This case involves a housing development in Detroit.  LDHA is a limited partnership that has operated the property since 1977.  The property consists of 126 low-income rental units, including approximately 20% Section 8 housing units.  FFPC is the general partner of LDHA.

-1-

Defendant Housing Investors Limited by Napico GP, LLC (HIL) is another limited partner.[1]  In 2017, FFPC negotiated a sale of the subject property to Jackson Land Holding Company, LLC (JLHC), which later assigned its interest to plaintiff.  FFPC and JLHC executed two amendments to the purchase agreement, purportedly to address the title insurer's concerns regarding FFPC's authority to sell the subject property without the consent of the limited partners.  The sale never closed.

Plaintiff then brought this action against LDHA, FFPC, and HIL for breach of contract. LDHA and FFPC raised the defense that the purchase agreement was not enforceable.  They specifically argued that FFPC's authority under the Limited Partnership Agreement (LPA) and MCL 449.9(1) was restricted to acts in LDHA's "usual course of business," which did not include the sale of the subject property.  Plaintiff amended its complaint to add claims for fraudulent misrepresentation, negligent misrepresentation, silent fraud, and fraud in the inducement.  LDHA and FFPC moved for summary disposition, arguing that plaintiff had sufficient information indicating FFPC's lack of authority.  The trial court granted defendants' motions.  This appeal follows.

## II.  STANDARD OF REVIEW

"A trial court's decision regarding a motion for summary disposition is reviewed de novo." *Sullivan v Michigan*, 328 Mich App 74, 80; 935 NW2d 413 (2019).  Defendants moved for summary disposition under MCR 2.116(C)(8) and (10).  Motions for summary disposition under MCR 2.116(C)(8) test the legal sufficiency of the complaint on the basis of the pleadings alone. *Id*.  All well-pleaded factual allegations are accepted as true and construed in the light most favorable to the nonmoving party.  *Id*.  "Under MCR 2.116(C)(10), summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks omitted).  We "must review the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Id*. (quotation marks omitted).  "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks omitted).  A court may not "make findings of fact; if the evidence before it is conflicting, summary disposition is improper." *Id*. (quotation marks and emphasis omitted).

The trial court cited both MCR 2.116(C)(8) and (10) in its order granting summary disposition.  "When an action is based on a written contract, it is generally necessary to attach a copy of the contract to the complaint.  MCR 2.113[(C)].  Accordingly, the written contract

---

[1] Plaintiff's complaint named HIL as a defendant.  HIL filed a cross-complaint against FFPC and LDHA, which was later dismissed per the parties' stipulation.  HIL did not file a separate summary disposition motion or join in FFPC's or LDHA's motions.  The trial court's final order states that its order "dispose of all claims and closes the case."  On appeal, plaintiff does not argue that the trial court erred by dismissing its claims against HIL.

becomes part of the pleadings themselves, even for purposes of review under MCR 2.116(C)(8)."[2] *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007). When a trial court considers evidence beyond the parties' pleadings, review is appropriate under MCR 2.116(C)(10). *Kosmalski v St John's Lutheran Church*, 261 Mich App 56, 59; 680 NW2d 50 (2004).

## III. BREACH OF CONTRACT

Whether an enforceable contract exists is a question of law we review de novo. *Aguirre v Michigan*, 315 Mich App 706, 714 n 3; 891 NW2d 516 (2016). Similarly, "the proper interpretation of contracts and the legal effect of contractual provisions are questions of law subject to review de novo." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366-367; 817 NW2d 504 (2012). We also review de novo questions involving the interpretation and application of a statute. *Dorko v Dorko*, 504 Mich 68, 74; 934 NW2d 644 (2019).

The statute of frauds, MCL 566.108, provides that "[e]very contract . . . for the sale of any lands . . . shall be void, unless the contract . . . thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing[.]" "Under fundamental agency law, a principal is bound by an agent's actions within the agent's actual or apparent authority." *James v Alberts*, 464 Mich 12, 15; 626 NW2d 158 (2001). "The authority of an agent to bind a principal may be either actual or apparent." *Alar v Mercy Mem Hosp*, 208 Mich App 518, 528; 529 NW2d 318 (1995).

Plaintiff suggests that FFPC had "apparent authority" to sell the subject property on LDHA's behalf, but fails to argue any apparent-agency theory. "Apparent authority arises where the acts and appearances lead a third person reasonably to believe that an agency relationship exists. However, apparent authority must be traceable to the principal and cannot be established only by the acts and conduct of the agent." *Id*. Plaintiff does not allege that LDHA undertook any action to cause it to believe that an agency relationship existed.

The principal issue here is whether an enforceable purchase agreement was created between JLHC and LDHA when FFPC executed the agreement on LDHA's behalf. "[T]he general rule is that contracts are interpreted in accordance with the law in effect at the time of their formation." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 201; 747 NW2d 811 (2008). The Uniform Partnership Act (UPA), MCL 449.1 *et seq*., delineates a partner's authority to bind a partnership as follows:

> (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently *carrying on in the usual way the business of the partnership of which he is a member* binds the partnership, *unless the partner so acting has in fact no authority to act for the partnership in the particular matter,*

---

[2] Plaintiff attached to its amended complaint copies of the purchase agreement, the amendments to the purchase agreement, and LDHA's LPA.

-3-

*and the person with whom he is dealing has knowledge of the fact that he has no such authority*;

(2) *An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners*;

(3) *Unless authorized by the other partners or unless they have abandoned the business, 1 or more but less than all the partners have no authority to*:

(a) Assign the partnership property in trust for creditors or on the assignee's promise to pay the debts of the partnership,

(b) Dispose of the good-will of the business,

(c) *Do any other act which would make it impossible to carry on the ordinary business of the partnership*,

(d) Confess a judgment,

(e) Submit a partnership claim or liability to arbitration or reference;

(4) *No act of a partner in contravention of a restriction on his authority shall bind the partnership to persons having knowledge of the restriction*. [MCL 449.9 (emphasis added).]

Under the Michigan Revised Uniform Limited Partnership Act (MRULPA), MCL 449.1101 *et seq*., "[e]xcept as provided in this act or in the partnership agreement, a general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners." MCL 449.1403(a).

FFPC and LDHA argued that, under the UPA and MRULPA, FFPC did not have authority to bind LDHA to the purchase agreement because sale of the property was not "carrying on in the usual way the business of the partnership," MCL 449.9(1), and because sale of the subject property "would make it impossible to carry on the ordinary business of the partnership," MCL 449.9(3)(c). Conversely, plaintiff argues that the sale of the property was an act in the partnership's usual business because the LPA was set to expire and the subject property's debt encumbrance rendered the partnership's usual business of providing low-rent housing unsustainable. These arguments require us to analyze the term "usual way" with regard to the partnership's conduct of its business.

"Based on several considerations, including the principle of separation of powers, the Court must give effect to the Legislature's intent." *Tomasik v Michigan*, 327 Mich App 660, 672; 935 NW2d 369 (2019). "The Legislature is presumed to intend the meaning clearly expressed, and this Court must give effect to the plain, ordinary, or generally accepted meaning of the Legislature's terms." *Id*. at 672-673 (quotation marks omitted). "Terms used in a statute must be given their plain and ordinary meaning, and it is appropriate to consult a dictionary for definitions." *Eldenbrady v Albion*, 294 Mich App 251, 254-255; 816 NW2d 449 (2011) (quotation marks

omitted). The *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "usual" as:

> 1: accordant with usage, custom, or habit: NORMAL 2: commonly or ordinarily used . . . 3: found in ordinary practice or in the ordinary course of events: ORDINARY.

These definitions limit the characteristics of "usual" to normality and ordinariness. None of these definitions indicate that a nonordinary, abnormal, or unprecedented action or occurrence can be considered "usual" if it is appropriate to or suitable for changing circumstances. Moreover, as used in MCL 449.9(1), the term "usual" refers to "the business of the partnership." Even assuming that LDHA's dissolution was imminent[3] and that a sale of the subject property was an appropriate undertaking in relation to dissolution, sale of the property still would not be ordinary or normal to the business of LDHA, which, according to LDHA's certificate of partnership, was "to provide housing facilities or social, recreational, commercial, and communal facilities . . . to serve and improve a residential area in which housing financed by the Michigan State Housing Development Authority is located . . . thereby enhancing the viability of such housing." Consequently, plaintiff's argument fails.

Furthermore, an act that is not for the purpose of carrying on the business of the partnership in the usual way does not bind the partnership unless the other partners authorize it. MCL 449.9(2). Section 7.1 of the LPA here provides that the general partner "may not, without the written consent of the Limited Partner first obtained sell . . . (except in the ordinary course of the Partnership's business) or otherwise dispose of (a) the Project, or (b) all or substantially all of the Partnership's assets." Similar to statutory interpretation, "[a] dictionary may be consulted to ascertain the plain and ordinary meaning of words or phrases used in the contract." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). Section 7.1 does not allow the general partner to sell property without the limited partners' consent, unless the sale is "in the ordinary course of the Partnership's business." The *Merriam-Webster's Collegiate Dictionary* (11th ed) defines the adjective "ordinary" as "of a kind to be expected in the normal order of events: ROUTINE, USUAL. . . ." The definitions of "usual" and "ordinary" establish that these words are synonymous; they are both based on the characteristics of normality and typicality. Accordingly, we interpret the LPA in the same manner as the statute. Thus, regardless of whether LDHA was positioned to begin winding down its operations, selling the subject property was not part of its normal operations and cannot be considered within the "ordinary course of the Partnership's business." Therefore, a sale of the property was subject to approval by the limited partners. It is undisputed that the approval of the limited partners was never obtained.

---

[3] We do however note that it is not apparent that dissolution was imminent. The dissolution of LDHA was set for December 31, 2018, unless the parties agreed to an earlier date. The purchase agreement was signed on January 30, 2017, nearly two years before that date.

Plaintiff further argues that Section 5.1.6 of the LPA authorized FFPC to sell the subject property. The agreement actually states:

> 5.1 <u>The Partnership</u>
>
> *Subject to the specific limitations as set forth in this Agreement*, the Operating General Partner is hereby authorized on behalf of the Partnership:
>
> &ast; &ast; &ast;
>
> 5.1.6 To sell, lease, or otherwise dispose of the Project. [Emphasis added.]

The phrase "[s]ubject to the specific limitations" in § 5.1 clearly indicates that the operating general partner does not have unrestricted authority and discretion under § 5.1.6 to sell or dispose of the project. Rather, the authority prescribed in § 5.1.6 remains subject to specific limitations set forth elsewhere in the LPA. Section 5.1.6 does not create an exception to or conflict with § 7.1.

Additionally, the trial court concluded that the agreement was unenforceable because the first amendment to the purchase agreement established as a condition precedent to any sale that the seller "deliver . . . a written certification affirming that the representations and warranties set forth at Section 14 of the Agreement continue to be true, that Seller has the authority and has taken all actions necessary to make, execute, deliver, and perform the Agreement[.]" The second amendment provides that closing would take place "within ten (10) business days upon Cinnaire Title's determination that Seller has provided the necessary partnership consents and documentation for Cinnaire Title to issue its owner's title policy without standard exceptions in the purchase price amount and that Seller has and can convey marketable title by Warranty Deed to Purchaser."

"A condition precedent is a fact or event that the parties intend must take place before there is a right to performance." *Smith Living Trust v Erickson Retirement Communities*, 326 Mich App 366, 383; 928 NW2d 227 (2018) (quotation marks omitted). "If the condition is not satisfied, there is no cause of action for a failure to perform the contract." *Id*. (quotation marks omitted). "A condition precedent is distinguished from a promise in that it creates no right or duty in itself, but is merely a limiting or modifying factor." *Mikonczyk v Detroit Newspapers, Inc*, 238 Mich App 347, 350; 605 NW2d 360 (1999) (quotation marks omitted). The statement that "[s]eller shall deliver to Purchaser . . . a written certification" affirming the truthfulness of the representations in the purchase agreement imposes a preliminary requirement because the term "shall" is considered mandatory. See *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008). There is no apparent reason why the seller would be required to provide the certification affirming FFPC's agency or the seller's consent to the sale other than to verify that the buyer was receiving warrantable title. FFPC's provision of certification would not benefit plaintiff in any way other than to verify the validity of the sale and compliance with the statute of frauds. FFPC's failure to fulfill this condition thus prevented the completion of the conveyance.

In sum, defendants were entitled to summary disposition under MCR 2.116(C)(8) because plaintiff's pleadings, which included attached copies of the purchase agreement, the amendments to the purchase agreement, and the LPA, failed to establish that a party lawfully authorized to sell

the subject property signed the purchase agreement. Pursuant to the UPA, the MRULPA, and the LPA, FFPC was not authorized to sell the property without the consent of the limited partners, which was never obtained. Additionally, FFPC did not fulfill the condition precedent of providing certification of its authority. Thus, the purchase agreement was not enforceable. Defendants also were entitled to summary disposition under MCR 2.116(C)(10) because the submitted evidence demonstrated that there was no genuine issue of fact that FFPC lacked the authority to sell the property without the consent of the limited partners and there was no evidence that this consent was ever obtained. Accordingly, the trial court did not err by granting defendants' motion for summary disposition with respect to plaintiff's claim for breach of contract.

## IV. EQUITABLE RELIEF

Plaintiff argues that the trial court erred by dismissing its claims to quiet title to the subject property and for a declaratory judgment. We disagree.

## A. QUIET-TITLE

A quiet-title action is equitable in nature. We review equitable actions de novo. *Canjar v Cole*, 283 Mich App 723, 727; 770 NW2d 449 (2009). The purpose of a quiet-title action is to "determine the existing title to property by removing any cloud therefrom." *Ingle v Musgrave*, 159 Mich App 356, 365; 406 NW2d 492 (1987). MCL 600.2932(1) permits any person "who claims any right in, title to, equitable title to, interest in, or right to possession of land" to "bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not." "In an action to quiet title, the plaintiffs have the burden of proof and must make out a prima facie case of title." *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999).

Plaintiff argues that title to the subject property should have been quieted in its name because it had an equitable interest in the property under MCL 449.10(2), which provides:

> Where title to real property is in the name of the partnership, a conveyance executed by a partner, in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under [MCL 449.9(1)].

Plaintiff's reliance on this statute is misplaced. First, there was never a conveyance of the subject property to plaintiff by FFPC. Second, under MCL 449.10(2), an equitable interest arises only from a conveyance by a partner acting within the partner's authority under MCL 449.9(1). As explained earlier, because a sale of the property was not ordinary or normal to the business of LDHA, it was not within FFPC's authority under § 9(1), and thus the purchase agreement was unenforceable. Accordingly, the trial court did not err by dismissing plaintiff's claim to quiet title to the property.

-7-

## B. DECLARATORY JUDGMENT

"This Court reviews de novo a trial court's decision on a motion for summary disposition in an action for a declaratory judgment." *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 512-513; 810 NW2d 95 (2011). MCR 2.605 governs a trial court's authority to enter a declaratory judgment. The court rule pertinently provides that "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). "[A]n 'actual controversy' exists for the purposes of a declaratory judgment where a plaintiff pleads and proves facts demonstrating an adverse interest necessitating a judgment to preserve the plaintiff's legal rights." *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 225; 934 NW2d 713 (2019). "When there is no actual controversy, the court lacks jurisdiction to issue a declaratory judgment." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 545; 904 NW2d 192 (2017). Because the trial court properly determined that the purchase agreement was void and unenforceable, there was no remaining controversy that required declaratory relief. Therefore, the trial court did not err by dismissing plaintiff's request for declaratory relief.

## V. FRAUDULENT MISREPRESENTATION

Plaintiff argues that it established a jury-triable claim of fraudulent misrepresentation arising from FFPC's warranty in the original purchase agreement that it had the authority to sell the subject property. We disagree.

"Common-law fraud or fraudulent misrepresentation entails a defendant making a false representation of material fact with the intention that the plaintiff would rely on it, the defendant either knowing at the time that the representation was false or making it with reckless disregard for its accuracy, and the plaintiff actually relying on the representation and suffering damage as a result." *Barclae v Zarb*, 300 Mich App 455, 476; 834 NW2d 100 (2013) (quotation marks omitted). To prove fraud, a plaintiff must demonstrate the following:

> (1) the party made a material representation; (2) the representation was false; (3) when the party made the representation, the party knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the party made the representation with the intention that the opposing party would act upon it; (5) the opposing party acted in reliance upon it; and (6) the opposing party suffered damage. [*Maurer v Fremont Ins Co*, 325 Mich App 685, 695; 926 NW2d 848 (2018) (quotation marks and brackets omitted).]

Plaintiff's claim of fraud is based on FFPC's warranty of authority in § 14(a) of the original purchase agreement, in which "Seller represents and warrants to Purchaser [] [that] Seller has the authority and has taken all actions necessary to make, execute, deliver, and perform the Agreement and to convey and transfer its interest in the Property." Defendants do not deny that this statement is factually incorrect. However, they assert that the first amendment to the purchase agreement

negated this misrepresentation because it "revised" the seller's warranties in the purchase agreement as follows:

> Seller shall deliver to Purchaser prior to Closing a written certification affirming that the representations and warranties set forth at Section 14 of the Agreement continue to be true, that Seller has the authority and has taken all actions necessary to make, execute, deliver, and perform the Agreement and to convey and transfer its interest in the Property[.]

Defendants also rely on the second amendment, which provided that closing would take place "within ten (10) business days upon Cinnaire Title's determination that Seller has provided the necessary partnership consents and documentation for Cinnaire Title to issue its owner's title policy without standard exceptions in the purchase price amount and that Seller has and can convey marketable title by Warranty Deed to Purchaser." Plaintiff denies that these statements retracted the affirmative statement in the purchase agreement.

Although these statements do not directly negate FFPC's representation of authority, they signify the parties' agreement that FFPC's representations of authority alone are not sufficient, and that further documentation would be necessary to ensure that the purchaser was acquiring warrantable title. Moreover, the statements in the amendments indicate that the purchaser could not rely on FFPC's undocumented representations regarding its authority. Furthermore, plaintiff should have known that the UPA and MRULPA limit a general partner's authority to bind a partnership to acts made "for apparently carrying on in the usual way the business of the partnership[.]" Thus, the scope of FFPC's authority was defined by statute, of which plaintiff cannot claim ignorance. See *Livingston v Dep't of Treasury*, 434 Mich 771, 800; 456 NW2d 684 (1990) (citation omitted) (holding that a clear statutory pronouncement constitutes "ipso facto sufficient notice that a duty exists").

Furthermore, FFPC and LDHA argue that plaintiff's reliance on the original representation was unreasonable because plaintiff could have discovered the limitations of FFPC's authority from the publicly-available certificate and from the LPA. In *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994), we reasoned that "[t]here can be no fraud where a person has the means to determine that a representation is not true." However, our subsequent decisions recognize limits on a party's duty to verify the truthfulness of a representation. In *Titan Ins Co v Hyten*, 491 Mich 547, 555 n 4; 817 NW2d 562 (2012), our Supreme Court explained:

> In *Mable Cleary Trust v Edward-Marlah Muzyl Trust*, 262 Mich App 485, 501, 686 NW2d 770 (2004), the Court of Appeals held that the rule articulated in *Nieves* is only applied when the plaintiff was 'either presented with the information and chose to ignore it or had some other indication that further inquiry was needed.' [] To the extent that the latter part of this statement can be read to support the proposition that a party has an independent duty to investigate and corroborate representations, we overrule *Mable Cleary Trust*. [Emphasis omitted.]

It is not clear whether plaintiff or Cinnaire Title was the party to propose the certification requirements in the first and second amendments. However, their inclusion presented plaintiff with information indicating that further inquiry was necessary. Even if plaintiff was not required

to obtain and investigate the certificate and LPA to investigate FFPC's agency, plaintiff acknowledged that FFPC's agency was not verified when it agreed to the amendments and the addition of a condition precedent.

Plaintiff further argues that a May 29, 2017 e-mail from FFPC's consultant, Sheila Walker, to plaintiff's attorney represented that the limited partners had approved the sale. However, Walker admitted in the e-mail that she had not seen a purported amendment verifying the limited partner's consent. Plaintiff could not reasonably rely on Walker's representation when Walker admitted that she had not seen the alleged document.

In sum, FFPC's original representation of authority was modified in the amendments that required certification of FFPC's authority or the other partners' consent. Plaintiff acknowledged that FFPC's undocumented representation was insufficient to bind the partnership. Therefore, the trial court did not err by dismissing plaintiff's claim of fraudulent misrepresentation.

## VI. FRAUD IN THE INDUCEMENT

Citing *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639-640; 534 NW2d 217 (1995), plaintiff states that fraud in the inducement, which occurs when a party materially misrepresents future conduct, "renders a contract voidable at the option of the defrauded party." However, plaintiff fails to provide any argument explaining how these principles apply to this case. A party's failure to brief the merits of a claim generally constitutes abandonment of an issue. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Id*. (quotation marks omitted)).

In any event, plaintiff's claim for fraud in the inducement cannot succeed. "Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D Begola Servs*, 210 Mich App at 639. Plaintiff, as the allegedly defrauded party, does not seek to void the purchase agreement, but rather to enforce it. *Id*. at 640. Fraud in the inducement is not an appropriate cause of action to achieve enforcement.

## VII. NEGLIGENT MISREPRESENTATION AND SILENT FRAUD

Plaintiff argues that the trial court erred by dismissing its claims for negligent misrepresentation and silent fraud. We disagree.

### A. NEGLIGENT MISREPRESENTATION

"A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Barclae*, 300 Mich App at 476 (quotation marks omitted). Negligent misrepresentation requires a defendant to owe a duty to the plaintiff. *Id*. at 477. Plaintiff has not identified any duty that FFPC owed to it. FFPC did not have a fiduciary relationship with plaintiff;

instead, they were parties conducting negotiations at arm's length. Moreover, plaintiff could not justifiably rely on FFPC's representations after the purchase agreement was amended to impose the condition precedent that FFPC would provide certification of authority or the other partners' consent to the sale. Therefore, plaintiff's negligent misrepresentation claim lacks merit.

## B. SILENT FRAUD

"Silent fraud, also known as fraudulent concealment, acknowledges that suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud." *Maurer*, 325 Mich App at 695. "Such a duty may arise by law or by equity; an example of the latter is a buyer making a direct inquiry or expressing a particularized concern." *Alfieri v Bertorelli*, 295 Mich App 189, 193; 813 NW2d 772 (2012).

In *Alfieri*, we held that a seller's agent could be liable for silent fraud by stating in a sales brochure that the property for sale was clean and no longer contaminated. *Id*. at 195-196. In this case, FFPC did not conceal its lack of agency. It agreed in the amendments to provide certification that it had authority to sell the subject property, or that the limited partners would consent to the sale as a condition precedent to any conveyance. It failed to provide the certification, causing the transaction to fail. There was no concealment of a material fact. Therefore, plaintiff's silent fraud claim also lacks merit.

Affirmed. As the prevailing parties, LDHA and FFPC may tax costs. MCR 7.219(A).


/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Anica Letica

-11-